Nella Faulk McDONALD *v.*
Marcella TREAT et al

79-271                                           593 S.W. 2d 462
Supreme Court of Arkansas
Opinion delivered February 11, 1980

*Barrett, Wheatley, Smith & Deacon,* by: *Stephen M. Reasoner,* for appellant.

*Alfred F. Holland,* by: *Michael E. Todd,* for appellees.

GEORGE ROSE SMITH, Justice. Mrs. Ollie A. Horne, 84 died in October, 1978. At her death she had a savings account, No. 1410571, amounting to $13,061.44, in the First Federal Savings & Loan Association of Paragould. As the proof in this case later showed, First Federal did not have in its possession any document signed by Mrs. Horne stating how the account was to be payable on her death. Nevertheless, First Federal paid the amount in the account to Mrs. Horne's niece, the appellant Nella Faulk McDonald, in the belief that the account was payable to her upon Mrs. Horne's death. The appellee Marcella Treat, another niece, protested the payment. After a hearing the probate court held that the payment was improper and directed Mrs. McDonald, who is also the executrix of Mrs. Horne's will, to restore the money to the estate. This appeal is from that order.

In order for a savings account in a bank or savings and loan association to be payable on the depositor's death to a third person, the depositor must *designate in writing* that the account is so payable. Ark. Stat. Ann. §§ 67-552 and 67-1838 (Repl. 1966). The requirement of a written designation means that the depositor must affix his signature to an instrument stating his intention. *Cook* v. *Bevill,* 246 Ark. 805; 440 S.W. 2d 570 (1969), where we also pointed out that the two statutes are similar. Thus the question before the probate court was whether Mrs. Horne had designated in a signed document how account No. 1410571 was to be payable on her death. The burden of proof was on Mrs. McDonald to show her right to property owned by Mrs. Horne at her death. The issue on appeal is simply whether the probate court's decision is clearly against the preponderance of the evidence.

At the outset we stress the desirability of certainty with regard to payable-on-death bank accounts and certificates of deposit. Such a disposition of money is similar to a will in that it may be changed by the property owner during his

lifetime and does not take effect until his death. The law carefully safeguards the integrity of wills, but under the earlier statutes there was a regrettable degree of laxity with respect to payable-on-death accounts. We summarized the situation in *Cook* v. *Bevill, supra,* in construing new statutes applicable to bank deposits:

> It is a mild statement to say that Act 260 of 1937 created a maze of problems in the handling of joint bank deposits and certificates. Much litigation over those deposits has reached this Court. Many decisions had to be made by ascertaining the intent of the depositor from parol evidence and "after death had sealed the lips of the person principally concerned." *Ratliff* v. *Ratliff, Adm'x.,* 237 Ark. 191, 372 S.W. 2d 216 (1963). Act 260 had minimal written requirements which fell far short of being sufficient. In that situation the Legislature and the banking interests turned to the comprehensive act under which the building and loan associations had been operating for years.

Thus what the new statutes did was to correct the earlier state of uncertainty by requiring that persons who resort to payable-on-death accounts or certificates designate in writing, over their signatures, just who is to receive the money at their death.

In this case the appellant could produce nothing signed by Mrs. Horne stating that account No. 1410571 was to be payable on her death to the appellant. The appellant argues, instead, either that what Mrs. Horne signed with respect to two other accounts was sufficient or that she actually signed the necessary document, but it was lost by First Federal. We cannot say that the probate judge's rejection of those two theories is clearly against the weight of the evidence.

First Federal, in connection with its savings accounts, issues to the depositor a "certificate book," in the front of which is a page entitled Certificate of Deposit. This does not purport to be a negotiable or non-negotiable instrument. It simply certifies, over the signature of an officer of the association, that the named depositor has an account in First

Federal which will bear interest at a certain rate for a certain period if withdrawals do not reduce the account below a specified amount.

William J. Block, chairman of the board of First Federal, was the only witness who testified about Mrs. Horne's accounts. Mrs. Horne first opened a 5% interest account in 1967 by depositing $9,000 in her own name, but payable to Marcella Faulk Treat upon her death. In 1969 Mrs. Horne transferred the money, with accrued interest, to a 5 ¼% Certificate Account payable on her death to Mrs. Treat or Mrs. McDonald. In 1970 Mrs. Horne transferred the money to a new Certificate Account, apparently bearing a still higher interest rate, payable on her death to Mrs. McDonald. Block produced a mimeographed withdrawal request form, signed by Mrs. Horne, transferring $10,145.45 to the new account and reciting that it was payable on Mrs. Horne's death to Mrs. McDonald. In 1971 Mrs. Horne transferred $10,685.08 to still a fourth account. Block also produced that withdrawal request form, which referred to the previous account, recited that the new account was payable to "Same," and was signed by Mrs. Horne. Thus in a period of less than four years Mrs. Horne left her money in three different ways.

Finally, on June 30, 1975, Mrs. Horne transferred $13,000 to account No. 1410571, now in dispute. Block produced the certificate book, which had been turned in when Mrs. McDonald withdrew the money after her aunt's death. The certificate in the front of the book recites that "Mrs. Ollie Horne as sole owner but payable to Nella Faulk McDonald upon death of Mrs. Ollie Horne holds a Certificate of Deposit of $13,000.00," bearing 7 1/2% interest. The certificate is signed only by Block.

With respect to the account now in issue Block could not produce a transfer form such as those used in 1970 and 1971. On direct examination he testified that if the association had proceeded in accordance with its usual practice, a signature from Mrs. Horne would have been required. But he went on to say: "We went on the computer system about 1975, and that form is no longer used. Frankly, we didn't think about it until yesterday afternoon. . . . We can't seem to find any of

our records for 1974 or '75. By any records, I am talking about that type of record, the withdrawal requests. Not only Mrs. Horne's, we can't find anybody's. . . . We have not yet located them; we are still looking."

On cross examination Block testified that the association had not used the forms "for three and a half or four years." Block himself knew Mrs. Horne only slightly and doubted very seriously if he had taken part in any of the actual transactions, which would have been handled by the tellers. He recognized the writing on one of the forms as being that of Mrs. Grace Early.

The appellant first argues that it was not necessary for Mrs. Horne to sign anything when she opened account No. 1410571, because she had signed forms in 1970 and 1971 with respect to earlier accounts containing the same money. Such a holding would disregard *Cook* v. *Bevill* and go back to our former state of uncertainty, when the courts had to determine the depositor's intention. Moreover, on the very certificate now in issue the typewritten name, Nella Faulk McDonald, was stricken out, with the following words substituted in longhand: "Rebecca Rainey Clark and Dorothy Lloyd 10-6-77." Thus it would be arguable, if intention were controlling, that Mrs. Horne changed her mind again a year before her death. We refuse to revive the uncertainties that were eliminated by the present statutes.

Second, the appellant argues that Mrs. Horne actually signed a form, which was misplaced. That argument is supported by only one statement, Block's assertion that *if* the association had proceeded in accordance with its usual practice, Mrs. Horne's signature would have been required. But Block's own testimony indicates that the former "usual practice" had probably been discontinued. The trial was held on February 6, 1979. Block said the form had not been used for three and a half to four years, which would go back to the six months between February 6 and August 6, 1975. The certificate is dated June 30, 1975, which was within that period of uncertainty. Block said that the association went on the computer in "about 1975," again leaving the date uncertain. He also testified that they could find no records clear back

through 1974, strongly suggesting that the computer opera-
tion began then, because the 1970 and 1971 forms were ap-
parently found the preceding afternoon without difficulty.

Finally, the appellant had the burden of proof and
doubtless could have supplied exact information. Data within
the computer itself should show exactly when it was first used
to store the information. A diligent search for the records
should have been started before the afternoon preceding the
trial. In similar circumstances we have pointed out that such
a search can continue during the time allowed for a motion
for a new trial (about 40 days here, as the decree was not
entered until a month after the hearing). *Mitchell* v. *State,* 258
Ark. 562, 528 S.W.2d 368 (1975); ARCP, Rule 59. Block was
apparently an interested witness, because the association was
not free from responsibility in keeping records essential to the
validity of transactions it supervised. The probate judge did
not have to accept his testimony at face value. No explanation
is offered to account for the appellant's failure to call as
witnesses the tellers who had first-hand knowledge about the
matter. In the face of such persuasive reasons supporting the
probate court's decision, we certainly cannot say that it is
clearly against the preponderance of the evidence.

Affirmed.