Mrs. H. C. WALKER, Alva Marie ROWBOTHAM
and Jewell Belle PRESSON *v.* Earl HOOKER,
Joy HOOKER, Dale Clyde WALKER, Joann WALKER,
Bill WALKER, Betty WALKER and Dixie Retta DIXON

83-263                              667 S.W.2d 637

Supreme Court of Arkansas
Opinion delivered March 19, 1984

62

*Daily, West, Core, Coffman & Canfield,* by: *Stanley A. Leasure,* for appellants.

*Maddox & Miller,* for appellee.

P.A. HOLLINGSWORTH, Justice. During his lifetime, H. C. Walker, also known as Clyde Walker, now deceased, was in the construction and building supply business. He and his wife had six children, all of whom are now adults. As a corollary to his businesses and for other reasons, he acquired and sold real property. Usually, H. C. Walker provided the funds for the acquisition of the real property. Occasionally one of the children would also provide part of the purchase price. The same practice was followed regarding the purchase of personal property which is also involved in the present controversy.

When the real property was sold, and a promissory note

and mortgage were taken from the purchasers, the general practice was that the mortgage and promissory note would be placed in the name of either one of the three children who had maintained a life-long, close relationship with their father. The incomes from the properties or promissory notes were paid to H. C. Walker and occasionally to the child in whose name the note or property was listed. Usually then the child, upon request, turned the payments over to H. C. Walker. However, sometimes that child would keep the income. At other times, H. C. Walker would give that child a small sum of money at the time of the transaction.

Also involved in this controversy are certain money market certificates and certificates of deposit, each of which H. C. Walker had purchased jointly in his name and the name of one of his children. In each case either the certificate itself and/or the signature card indicated that the named owners were joint tenants with the right of survivorship or that the account was payable to the survivor. In each case, H. C. Walker had signed either the duplicate certificate receipt itself and/or the signature card.

Following the death of H. C. Walker, Dale Clyde Walker, H. C. Walker's son and the executor named in H. C. Walker's will, commenced probate proceedings in the Polk County Probate Court.

H. C. Walker's widow, Dixie Belle Walker, and two of their daughters, Jewel Belle Presson and Alva M. Rowbotham, all of whom are appellants herein, filed actions in the probate proceedings against the Executor, Dale Clyde Walker, and the other children of H. C. Walker and Dixie Belle Walker, namely Betty Wayne Walker, Joy Fern Hooker and Dixie Retta Dixon, together with their respective spouses, Appellees herein. These actions sought the removal of Dale Clyde Walker as Executor and an accounting of the properties and monies mentioned above. The probate judge denied the relief sought.

Appellees then filed complaints in four separate actions in Polk County Chancery court against the appellants, alleging that the Appellants possessed certain property

and/or monies belonging to the Estate of H. C. Walker, deceased, and requesting that the appellants be compelled to turn over the property and/or monies to the Estate. The separate actions were consolidated for trial.

The Chancellor set the matter for hearing and after considering the testimony and exhibits thereto, entered an Order finding that the estate of H. C. Walker, deceased, had no interest in two money market certificates nor two certificates of deposit as these transactions were in substantial compliance with Ark. Stat. Ann. § 67-552 (a) (Repl. 1980) and other Arkansas law, which entitles the survivor of the named persons on such certificates to take the proceeds thereof; that the disputed real estate and all but one of the disputed promissory notes were funded by H. C. Walker and that he had no intention of making gifts to those persons in whose names the properties or promissory notes were placed, and that these properties became a resulting trust held for the benefit of the H. C. Walker estate; that with respect to the one promissory note, there was no resulting trust and Dale Clyde Walker, in whose name the note had been placed, had an actual interest in said note and participated in the transaction and therefore the estate of H. C. Walker had no interest in that note; that certain items of personal property were not the subject of a resulting trust and that the estate of H. C. Walker, deceased, had no interest therein; and that a $7,000.00 promissory note executed by Appellee Earl Hooker in favor of the Decedent, H. C. Walker, had been paid in full by Earl Hooker and was not a part of the estate of H. C. Walker, deceased. From this Order, the Appellants have filed this appeal and the Appellees/Cross-Appellants have filed their cross-appeal. Because of the multiple issues raised, we will discuss them in order.

MONEY MARKET CERTIFICATES

H. C. Walker purchased money market certificate No. 12564 for $20,000 at the Union Bank of Mena on March 19, 1980. On March 27, 1980, he purchased a second $20,000 certificate No. 12613 at the same bank. The certificate stated:

this certifies that Clyde Walker or Dale Clyde Walker,

whose address is P.O. Box 77, Cove, Arkansas 71937, has deposited in this bank payable to depositor or if more than one, to either or any said depositors or the survivor or survivors . . .

The Chancellor found that H. C. Walker contributed all the funds for the purchase of the certificates and that he signed both certificates. After H. C. Walker's death, his son, Dale Clyde Walker, cashed both certificates as survivor. The sole issue on appeal is whether there was compliance with § 67-552 (a). At the time the certificates were purchased, the bank prepared an original copy of each certificate and two duplicates, all of which bore the same reference to being payable to the survivor. The customer inspected the document and affixed his signature to one of the copies. The bank retained both copies. The appellants maintain that the statute requires that the depositor designate the survivor in a *separate* writing and that the inclusion of such a designation on the certificate is not enough. We disagree and uphold the chancellor.

We have held that there must be substantial compliance with the designation in writing requirement of the statute. *Cook* v. *Bevill*, 246 Ark. 805, 440 S.W.2d 570 (1969). We have also held that no survivorship interest is created when the decedent does not affix his signature to an instrument complying with the statutory requirement, in other words we have required a writing, signed by the purchaser, and an indication of intention. *Carlton, Administrator v. Baker, Bank of Northeast Ark.*, 267 Ark. 949, 591 S.W.2d 696 (Ark. App. 1980). In *Carlton*, after summarizing our rules on the writing requirement, the Court of Appeals upheld the trial court's decision that there was sufficient evidence of an intention on the part of the decedent that two certificates of deposit were to pass to her niece upon her death. Those certificates were worded very similarly to the money market certificates at issue here as they were in the name of the decedent, the niece, "either or the survivor of either." Also as here, the decedent at the time of purchase signed a receipt for the certificate.

In *Gibson* v. *Boling*, 274 Ark. 53, 622 S.W.2d 180 (1981),

we held "[I]t is clear from the act and we have held that the depositor must designate the survivor in a separate writing, other than as payee, if the transaction is to be treated as one of joint tenancy with right of survivorship." It is upon the use of the word "separate" that the appellants base their argument. In other cases, however, we have simply held that in order for an account to be payable on the depositor's death to a third person, the depositor must designate in writing that the account is so payable. *McDonald* v. *Treat*, 268 Ark. 52, 593 S.W.2d 462 (1980). "The requirement of a written designation means that the depositor must affix his signature to an instrument stating his intention." *McDonald, supra.* In *Martin* v. *First Security Bank*, 279 Ark. 273, 651 S.W.2d 70 (1983), we held that even when the language of the certificate makes a reference to survivorship, the statute requires that the purchaser of the certificate sign a writing stating her intention that the funds be paid to the alternative payee upon the purchaser's death. The burden of proof in such a case is on the party claiming the property as a survivor. *McDonald, supra.* On appeal, we must decide whether the chancellor's decision is clearly against the preponderance of the evidence. *Id.*

The statute has been substantially complied with in this case. *Gibson*'s reference to a separate writing simply means that the fact that one is named as payee on a certificate of deposit or a money market certificate does not entitle the payee to be treated to a survivorship interest. That takes a separate writing, not a separate instrument. Here, the instrument named Dale Clyde Walker as a survivor and a copy was signed by the decedent. That is enough. In the recent case of *Morton* v. *McComb*, 281 Ark. 125, 662 S.W.2d 471 (1983), we found substantial compliance with the statute where it was plainly typed on the signature cards that these were payable-on-death accounts, the individuals were named who would receive the accounts if they survived the purchaser, and the cards were signed. No less was done by the decedent on the money market certificates at issue in this case. Appellants argue in the alterntive that there is no evidence that H. C. Walker signed the certificates or that he was mentally competent at the time. The appellees correctly point out that such an argument would also defeat the

interest of the estate in the certificates. Ruby Lunsford, an official with the bank, testified that H. C. Walker or Clyde Walker signed the receipts and that Clyde Walker and H. C. Walker are the same person. In the absence of any concrete challenge by the appellants to the validity of the signature or the competency of the decedent, and the presumption in favor of both competency and validity, we find no merit in this argument.

## CERTIFICATES OF DEPOSIT

On June 14, 1976 H. C. Walker purchased Certificate of Deposit No. 04-463.3 for $20,000.00 at Superior Federal Savings & Loan Association in Mena. On March 27, 1980, H. C. Walker purchased a second certificate No. 04-22782.6 for $20,000.00. The two applications for the certificates were signed by H. C. Walker and Betty W. Walker and contained the following language:

> H. C. Walker and Betty W. Walker as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, . . . You are directed to act pursuant to any one or more of the joint tenants' signature shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay without any liability for such payment, to any one or the survivor or survivors at any time.

On August 2, 1976, H. C. Walker purchased Certificate of Deposit No. 04-554.3 for $20,000.00 at the same savings and loan. The application contained the same terms and was signed by the decedent and Joy Hooker. H. C. Walker also filled out three handwritten forms with respect to the applications. After Walker's death, Joy Hooker and Betty Walker cashed the certificates. The appellants maintain that there is no evidence the actual certificates were issued as the exhibits introduced were merely application cards, and therefore, that there was no evidence the certificates actually indicated a right of survivorship. The bank did not retain copies of the original certificates and none were introduced at trial. However, the signature cards were introduced and

the manager of the savings and loan testified that he was present when H. C. Walker came in to buy the certificates and that he, as was his usual practice, discussed with the decedent the right of survivorship aspect of the account. We affirm the chancellor and find that the evidence was sufficient that the certificates of deposit were issued in accordance with the applications signed by the decedent and his daughters and that, under the reasoning given *supra* as applied to money market certificates, § 67-552 (a) was substantially complied with, making the three certificates the property of the two daughters as survivors.

## HOEK PROMISSORY NOTE

H. C. Walker sold two tracts of land to Bill and Carolyn Hoek. The Hoeks gave a $19,000 promissory note payable to Dale C. Walker and secured by a mortgage on the land. Dale Clyde Walker provided one-third of the funds for the original purchase of the land sold to the Hoeks and H. C. Walker provided the remaining two-thirds. During his life, H. C. Walker received two-thirds of the monthly payment from the Hoeks with Dale Clyde Walker receiving the other one-third. The appellants argue that a resulting trust arises in favor of H. C. Walker's estate with respect to two-thirds of the promissory note and mortgage. The appellants claim there is no indication that H. C. Walker intended to make a gift to his son, as evidenced by the fact that he retained the right to collect two-thirds of the payment during his lifetime and in light of his longstanding practice of making land transactions in the names of his children. We have held that in order to constitute a resulting trust, "the purchase money or a specified part of it must have been paid by another or secured by another at the same time, or previously to the purchase, and must be a part of the transaction." *Kerby* v. *Feild*, 183 Ark. 714, 38 S.W.2d 308 (1931). The trust results at the time the original transaction takes place and is founded upon the actual payment of money and no other ground. *Id.* To establish a resulting trust, the testimony must be clear, satisfactory and convincing. *Id.* A resulting trust arises by operation of law and may arise despite the fact that there is no manifestation of intention to create an express trust. *Henslee* v. *Kennedy*, 262 Ark. 198, 555 S.W.2d 937 (1977).

The trust arises not out of an agreement but out of the circumstances surrounding the transaction which indicate that the beneficial interest is not to go with the legal title. *Id.* "It is presumed to arise in favor of one who pays or secures the purchase price for land at the time of the transaction when the deed is taken in the name of another." *Id.* The party asserting a resulting trust has a heavy burden of proof, and when the parties involved are spouses or children of the one who pays the purchase price, the law presumes that the purchase and registration of legal title in the family members' names were intended as gifts by him to them since they are the natural objects of his affection and largess. *Festinger et al* v. *Kantor et al*, 272 Ark. 411, 616 S.W.2d 455 (1981). That presumption, however, may be rebutted by evidence that the person who pays the purchase price did not intend for the transferee to have the beneficial interest in the property. Restatement (Second) *Trusts* § 443 (1959). Parol evidence of oral declarations or of the circumstances under which the transfer is made is admissible to show the payor's intent. *Id.*, comment a. Furthermore, § 443, comment a of the Restatement provides:

> [T]he fact that the circumstances are such that the payor would have a reason for taking title in the name of another other than an intention to give him the beneficial interest is an indication that he did not intend to make a gift . . . [T]he fact that the payor managers the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, is evidence to rebut the inference of an intention by the payor to make a gift to the transferee.

The appellees point out that H. C. Walker paid no taxes on the income from the note prior to his death. Dale C. Walker, however, also paid no taxes on the income until after his father's death. As to the circumstances surrounding the transaction, we feel there is sufficient evidence that H. C. Walker habitually bought and sold land in the names of his children, making the fact that title was in his son's name not determinative of the ownership of the promissory note and mortgage. Dale C. Walker does have a one-third interest in

the property since that is the amount of money he contributed towards the purchase price and the percentage of the Hoek's payments he had been receiving. The remaining two-thirds constitutes a resulting trust in favor of H. C. Walker's estate. "Where it is shown that the payor intended to have a partial interest in the property, a resulting trust arises in favor of the payor as to such interest." Restatement (Second) *Trusts* § 443 comment b (1959). We recognized this rule in *Clark* v. *Clark*, 191 Ark. 461, 86 S.W.2d 937 (1935), where we stated that "where the payment of a child's funds is only a part of the consideration, a resulting trust *pro tanto* arises in his favor, provided it is for some definite aliquot part of the whole consideration." Therefore, we reverse the chancellor and hold that a resulting trust does arise in the amount of two-thirds of the Hoeks' monthly payments.

## TRAILER AND BOAT

The decedent purchased a travel-trailer with his own funds in the name of Dale Walker. Both men used the travel-trailer, but apparently they generally used it together. H. C. Walker also purchased a boat and boat trailer in which Dale Clyde Walker claims a one-third interest. The title reflects Dale C. Walker as the sole owner, however, H. C. Walker was the primary user of the boat. The Chancellor found that neither item was within the resulting trust since they were personal property. Dale Clyde Walker has since traded the travel-trailer in exchange for a two-acre tract of land. While resulting trusts generally arise with respect to transfers of the legal title to land, a resulting trust has been raised on a transfer of personal property, whether tangibles or intangibles, to one person on a consideration from another. 76 Am Jur 2d, *Trusts*, § 209 (1975). Here, the presumption of a gift was rebutted by the evidence at trial of the decedent's practice of purchasing property and placing it in his children's names. The appellants presented no additional evidence that would indicate that H. C. Walker intended the transactions involving the boat and trailer as any different from his numerous other transactions. Therefore, we reverse the chancellor's holding as to this point and find that the travel-trailer is part of a resulting trust and that the tract of land Dale Clyde Walker received in exchange for it therefore

belongs to the estate. Similarly, we hold that two-thirds interest in the boat and boat trailer is in the nature of a resulting trust for the estate with Dale Clyde Walker being sole owner of the remaining one-third interest.

## HOOKER PROMISSORY NOTE

Earl Hooker borrowed $7,000 from H. C. Walker. The demand note, which was unsecured, was introduced at the trial. Although the note evinces no sign of payment, Hooker maintains that the note has been paid in full. The Chancellor agreed and we affirm. The trial judge heard all of the evidence and was in a better position to evaluate the demeanor of the witnesses. *Festinger, supra.* We cannot say that his decision was clearly erroneous and therefore, we affirm his holding that the Hooker note has been paid in full and is not a part of the Walker estate.

## CROSS APPEAL

On cross-appeal, the appellees challenge the chancellor's holding that the Griffith property, the Andrews promissory note, the Hobson/Woods promissory note, the Davis promissory note, and the one-half acre tract of road were the subject of a resulting trust for the benefit of the estate. The appellees rely on the presumption that a gift was intended when the purchaser of property places the title to the property in the name of a spouse or child of the purchaser. The appellees maintain that the proof falls short of the clear, cogent and convincing evidence that is required. The evidence cited by appellees includes the decedent's declaration that the Hobson/Woods note was to belong solely to Dale Clyde Walker upon his death. This fact was testified to by Dale Clyde Walker who stated that his father told him he had some notes that would belong to Dale Clyde when he died. Dale Clyde Walker admitted however, that his father received the income from the notes during his lifetime. The rent money was placed in a bank account in Dale Clyde Walker's name and he would write his father a check for the total amount when his father asked him to. As to the Griffith property, H. C. Walker paid the full purchase amount and placed it in his son's name. H. C. Walker also received the

full monthly rental payment and his son did not receive any money until after his father's death. The appellees argue that Dale Clyde Walker exercised ownership over the property by finding a renter for it. The evidence however was merely that the people who babysat for Dale Clyde Walker needed somewhere to live and so H. C. Walker agreed to rent to them. The Davis note was placed in the name of Betty Walker, the decedent's daughter. All of the money was provided by H. C. Walker. Betty Walker testified that during her father's lifetime, she received the income from the notes every month, endorsed them, and turned them over to her father except for once or twice a year when she would keep the money. Before she kept the money, however, she would tell her father that she needed it. As to the other property, the appellees argue that the decedent's intention that the properties and notes be gifts to his children was communicated to Dale Clyde Walker, his nominated executor, whom he allegedly told that he wanted his children's debts forgiven. Further evidence of his intent is offered by his widow who testified that she knew her husband was putting property in various children's names, but did not know to what extent. Mrs. Walker testified, "I never did know much about his business. I never discussed this with my husband or raised any objections to it during his lifetime except that I objected to him putting property in some of their names and not in others, not treating them all fairly." The appellees maintain that this statement demonstrates that the children were intended to own the property since the question of fairness would not arise if the property were held in trust. This would be true if Mrs. Walker had claimed that she understood or participated in her husband's business. Her statements that she knew little if anything about her husband's business make her perception of his intent an uninformed one and therefore not persuasive. Other testimony was that H. C. Walker had not bought or sold any property in his own name since some time in the 1960's. In all the transactions which are the subject of the cross-appeal, H. C. Walker provided all the funds and received all the income. The persons in whose names he placed the property sometimes did not know anything about the land transaction, but merely signed deeds when their father requested that they do so. They also all testified that they would have

signed bills of sale on any of the property listed in their names by their father at their father's request. We find that the evidence is clear, cogent, and convincing that the transactions which are the subject of this cross-appeal are but another example of H. C. Walker's habit of buying land in the names of others but retaining the title and the beneficial interest in those lands. As to the cross-appeal, the chancellor's decision is affirmed.

Affirmed in part; reversed in part.