## SMACKOVER STATE BANK v. Phillip R. OSWALT

91-248                                             821 S.W.2d 757

Supreme Court of Arkansas
Opinion delivered December 23, 1991

*Michael R. Landers*, for appellant.

*Joseph Hickey*, for appellee.

JACK HOLT, JR., Chief Justice. This appeal arose over a dispute as to whether the appellant, Smackover State Bank (Bank), was negligent in establishing a certificate of deposit account as a joint tenancy with right of survivorship, with

appellee, Phillip Oswalt, as the surviving joint tenant. The case was certified from the Arkansas Court of Appeals under Ark. Sup. Ct. R. 29(1)(o), as it presents a question in the law of torts.

From the trial court's finding that the Bank had been negligent in setting up the account, the Bank appeals, raising three points for reversal: 1) the action is barred by the statute of limitations, 2) the Bank substantially complied with the statutory requirements for setting up the account, and 3) the Bank is not bound by a prior decision of the probate court, to which the Bank was not a party. Mr. Oswalt cross-appeals as to the amount of damages awarded. We affirm the trial court's decision.

Mr. Oswalt's mother, Claudia Oswalt, conducted business with Smackover State Bank for many years, before her death in 1983. Beginning in 1976, Mrs. Oswalt purchased a number of certificates of deposit, all of which were made payable to Mrs. Oswalt or Phillip Oswalt. It was the Bank's practice to have Mrs. Oswalt sign the back of the certificate on or following the date of maturity and, at that time, reissue a new certificate in accordance with her instructions. The certificates were the only evidence of the account and no copies were made.

On November 22, 1982, Mrs. Oswalt signed the reverse side of a certificate evidencing a balance of $15,000 made payable to "Claudia A. Oswalt or Phillip R. Oswalt, either or survivor." The certificate had been issued May 24, 1982, and matured the day Mrs. Oswalt signed it. On that same day, a new certificate was issued evidencing the same balance and again certifying the depositor as "Claudia A. Oswalt or Phillip R. Oswalt, either or survivor." The maturity date was May 23, 1983.

On May 14, 1983, Mrs. Oswalt died. Phillip Oswalt presented the certificate to the Bank on May 25, 1983, signed the reverse side, and obtained the proceeds of the account in the form of two cashier's checks made payable to each of his two children.

In 1987, Mr. Oswalt's sister filed an objection, in the Probate Court of Ouachita County, to the accounting of Mr. Oswalt. Mr. Oswalt had been appointed personal representative of Mrs. Oswalt's estate. It was claimed the $15,000 certificate of deposit was estate property. The probate court agreed and issued its order on April 28, 1988, finding that the intended joint and survivor

account had not been created in accordance with then Ark. Stat. Ann. § 67-552(a) and ordered Mr. Oswalt to reimburse the estate in the amount of the certificate, plus interest, which he did.

On May 13, 1988, Mr. Oswalt filed suit in the Union County Circuit Court, alleging the Bank negligently failed to establish the account with right of survivorship and seeking judgment in the amount of $15,000, plus prejudgment interest. Following a hearing and the submission of post-trial briefs, the circuit court held Mr. Oswalt's claim was not barred by the statute of limitations and that the Bank was negligent in carrying out Mrs. Oswalt's wishes that the certificate reflect a survivorship interest. Mr. Oswalt was awarded $10,000 (one third of the $15,000 having already been distributed to him through the estate), plus interest from April 28, 1988, (the date of the probate court's order) to the date of the circuit court's order. From this decision, the Bank appeals.

## I. STATUTE OF LIMITATIONS

The Bank first argues that Mr. Oswalt's complaint, which recites only a claim for negligence, is barred by the three year statute of limitations, under Ark. Code Ann. § 16-56-105 (Supp. 1991).

Without question, the three-year statute of limitation of section 16-56-105 applied to Mr. Oswalt's claim of negligence. *See Courtney* v. *First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989). However, where we apply the statute of limitation, we must first determine when the statute began to accrue and whether or not the statute has been tolled. In answering these questions, we refer to our previous cases.

Recently, we reaffirmed the traditional rule that, in cases of professional malpractice, the statute of limitations commences running not when the negligent act is discovered, but when the act occurs. *Chapman* v. *Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991). This principle was utilized in *Courtney* v. *First Nat'l Bank, supra.*

*Courtney* involved a certificate of deposit issued in the names of Richard or David Courtney. No mention was made of right of survivorship. Upon Richard's death, David claimed the proceeds of the certificate over and against the estate. We affirmed the trial

court's decision that David's claim was barred by the three-year statute of limitations, agreeing that the statute began running at the time the certificate was issued in 1982, rather than when Richard died in 1986, as the alleged act of negligence occurred at the time the bank failed to obtain a separate writing concerning the survivorship clause of the certificate of deposit.

■ Likewise, the Bank's alleged negligence, here, i.e. its failure to properly establish a survivorship account, occurred when it issued the final certificate on November 22, 1982. Mr. Oswalt's claim began to accrue at that time.

We note that the present case and *Courtney* are distinguishable from *Corning Bank* v. *Rice*, 278 Ark. 295, 645 S.W.2d 675 (1983), a case cited by Mr. Oswalt. In *Corning Bank*, Melvin Rice purchased several certificates of deposit in which he requested that they be made payable on his death to his brother, Marlin. A controversy later arose between Marlin and the administrator of Melvin's estate. We recognized the equally established principle that "a statute of limitations does not begin to run until the plaintiff has a complete and present cause of action," and held that the statute could not have commenced running until Melvin's death, "for until then, Melvin was free to change the alternative payee or to cash the CD's himself." 278 Ark. at 300, 645 S.W.2d at 678.

Unlike Marlin Rice, David Courtney and Mr. Oswalt had access to the proceeds from the moment the certificates were issued, as alternatives payees. They were not required, as was Marlin Rice, to wait until the death of the depositor to bring a cause of action regarding their rights to the proceeds, as they could have withdrawn the money at any time.

■ Our analysis does not conclude here. We must next consider our rule that the statute of limitation may be tolled during the time a putative plaintiff is prevented from bringing an action to which the statute of limitation applies. *Stroud* v. *Ryan*, 297 Ark. 472, 763 S.W.2d 76 (1989).

In *Stroud*, the negligent act of the attorney resulted in a default judgment against the plaintiff. The judgment was subsequently set aside by the trial court, but then was reinstated by the court of appeals. While acknowledging our continued adherence

to the traditional rule, we held the running of the statute of limitations was tolled while the default judgment was set aside. "During that time, although the alleged negligent act had occurred, Stroud had no claim against Ryan, as he could have shown no injury." 297 Ark. at 474, 763 S.W.2d at 78. "In essence, the injury ceased for a time to exist." *Id.*

■ Here, although the statute commenced running upon the issuance of the certificate, Mr. Oswalt's claim against the Bank ceased to exist once he was paid the amount of the deposit, six months later. The running of the statute was tolled until the probate court issued its order on April 28, 1988, disallowing the accounting, and Mr. Oswalt's complaint, filed only two weeks after that date, was thus timely.

■ Our holding on this issue differs from the trial court, which reasoned the tort cause of action did not accrue until the day Mr. Oswalt's sister objected to the accounting filed in Mrs. Oswalt's estate. Yet, by tolling the statute of limitations during the time Mr. Oswalt had no injury, we reach the same conclusion. We will sustain a trial court's ruling if it reached the right result, even though it announced the wrong reason. *West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991).

■ Mr. Oswalt's claim also includes breach of contract. Although this claim was not specifically pled, the complaint does state that Phillip Oswalt was the beneficiary of the agreement between Mrs. Oswalt and the Bank to create a joint tenancy with right of survivorship. At trial, both sides agreed the pleadings should be amended to conform with the proof, whereupon Mr. Oswalt's attorney informed the court that Mr. Oswalt was proceeding on a negligence theory, as well as a third party beneficiary claim for breach of contract. Actions by third persons based on written contracts which are made for their benefit are generally held to be within the five-year statute of limitations governing actions on written contracts. *H. B. Deal & Co.* v. *Bolding*, 225 Ark. 579, 283 S.W.2d 855 (1955).

The trial court found the cause of action for breach of contract did not accrue until the probate court issued its order. We find it unnecessary to determine the correctness of this ruling since both theories of recovery are based on the same alleged acts of negligence, and Mr. Oswalt has clearly filed an action, based on

his initial theory of negligence, within the applicable statute of limitations.

## II. STATUTORY COMPLIANCE

The Bank next claims the trial court erred in finding the Bank did not comply with Mrs. Oswalt's wishes in establishing a joint survivorship.

■ The applicable statute is former Ark. Stat. Ann. §67-552 (1965). The statute was subsequently amended by Act 843 of 1983 and is now codified at Ark. Code Ann. § 23-32-1005(1)(A); however, the amendment does not apply retroactively, *Courtney v. Courtney*, 296 Ark. 91, 752 S.W.2d 40 (1988), and since the certificates of deposit were all created before 1983, they come within the earlier statute.

Section 67-552(a) provides in pertinent part:

> If the person opening such account, or purchasing such certificate of deposit, *designates in writing* to the banking institution that the account or the certificate of deposit is to be held in "joint tenancy" or in "joint tenancy with right of survivorship", or that the account or certificates of deposit shall be payable to the survivor or survivors of the persons named in such account or certificate of deposit, then such account or certificate of deposit and all additions thereto shall be the property of such persons as joint tenants with right of survivorship.

(Emphasis added.) We have long held there need not be a strict and literal compliance with the wording of the Act, but there must be substantial compliance. *Cook v. Bevill*, 246 Ark. 805, 440 S.W.2d 570 (1969); *Walker v. Hooker*, 282 Ark. 61, 667 S.W.2d 637 (1984). No survivorship interest is created when the decedent does not affix his signature to an instrument complying with the statutory requirement; in other words, we require a writing, signed by the purchaser, and an indication of intention. *Walker v. Hooker, supra.*

Unfortunately, although there was ample evidence that both the Bank and Mrs. Oswalt intended to create a survivorship interest in Phillip Oswalt, the bank did not substantially comply with the statute in issuing the certificate. We held, in *Martin* v.

*First Security Bank*, 279 Ark. 273, 651 S.W.2d 70 (1983), that even when the language of the certificate makes a reference to survivorship, the statute requires that the purchaser of the certificate sign a writing stating her intention that the funds be paid to the alternative payee upon the purchaser's death. There need not be a separate *instrument* indicating her intention, but there should be a separate writing. *See Walker* v. *Hooker, supra.*

■ Here, the unsigned certificate issued on November 22, 1982, was the only evidence of the account; no copies were made, nor was there any other proof of Mrs. Oswalt's intention such as a signature card or receipt. Under these circumstances, we cannot say the trial court erred in finding the Bank failed to establish a right of survivorship in favor of Mr. Oswalt.

### III. PROBATE COURT DECISION

■ For its third point of error, the Bank contends that since it was not a party to the Ouachita County Probate proceedings, it cannot be bound by the decision from that court. The Bank argues that, had it been given an opportunity to present evidence in that proceeding, the outcome may have been different.

This matter is not before us; first, because the issue was not raised below, and second, because our review is confined to the circuit court proceedings.

### IV. CROSS-APPEAL

Recognizing that, as a beneficiary of Mrs. Oswalt's estate, Mr. Oswalt had regained a third of the amount of the certificate, the trial court awarded him $10,000, plus interest from the date of the probate court judgment until the date of its own judgment, at the rate of 6% annum, for a total of $11,164.44.

Mr. Oswalt cross-appeals from this award, claiming that the judgment should be modified to reflect the damage he suffered as the result of the probate court decision. That court ordered Mr. Oswalt to repay the amount of the certificate, $15,000, plus interest at 7 1/2% per annum from May 23, 1983, (the date of Mrs. Oswalt's death) until the estate was repaid. The total amount was $20,612.57. Thus, Mr. Oswalt argues, he should receive two-thirds of this amount, for a total of $13,741.71, plus interest at 6% from the date of the probate court judgment to the

440

date of the circuit court judgment.

Mr. Oswalt presented no argument below on this issue nor has he cited any authority or offered convincing argument to this court; we therefore decline to consider it. *See RLI Ins. Co.* v. *Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991).

For the foregoing reasons, we affirm.