HIGHTOWER, Judge.
Five heirs of Jasper Carnahan, including the succession representative, appeal the dismissal of their suit to recover, from the defendant bank, funds paid to the designated beneficiary of two payable-on-death accounts. Finding the summary judgment properly granted, we affirm.
Facts
On June 17, 1995, Jasper Carnahan and one of his six children, Michael, traveled to West Carroll National Bank (now Regions Bank) where Carnahan had two certificates of deposit. On that day, after a full explanation of the relevant options, the senior Car-nahan requested an amendment making the CDs payable on death to Michael W. Carna-han.[1] To effectuate the change, bank employees placed the designation, “Jasper W. Carnahan POD Michael W. Carnahan,” on both existing instruments. In two respective account agreements, the father also signed two notarized affidavits of kinship showing the account names as “J.W. Carnahan-POD.” In both agreements, directly under an X-marked box labeled “Pay-On-Death Beneficiaries,” appeared the wording, “POD-Michael W. Carnahan (SON).”
Two days after his father’s death from cancer on August 15, 1995, Michael requested and received the funds from the bank. The other five children, including the succession administratrix, then sued the bank alone for return of the proceeds (nearly $40,000), together with damages for unlawful conversion. Relying upon its compliance with the provisions of La. R.S. 6:314, and attaching the documents executed by Carnahan as well as affidavits and depositions of bank employees, the defendant responded with a motion for summary judgment.
Plaintiffs countered by arguing that La. R.S. 6:314 applies only to trust accounts, and, further, that the “P.O.D.” abbreviation utilized insufficiently met the demands of the statute. They additionally contended that West Carroll National Bank neither received a written designation of beneficiary nor executed a new instrument, and that the depositor’s intent remained at issue due to his mental state prior to death.
After considering the presented evidence, including the disclosed use of “P.O.D.” as standard banking procedure, the trial judge ruled that the transaction adequately met all the requirements of La. R.S. 6:314. Furthermore, the court found that Carnahan’s expressed request and execution of the affidavit of kinship, along with the factual observations by the bank employee who directly handled the transaction, evidenced the depositor’s clear intent to , create the account and an understanding of the import of those actions. The trial judge thus granted summary judgment dismissing plaintiffs’ claims. This appeal ensued.
Discussion
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Regarding that burden of proof, the legislature recently amended La. C.C.P. art. 966 for the purpose of clarifying Acts 1996, 1st Ex.Sess., No. 9, and statutorily overruling all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.03/14/97), 690 So.2d 41. See Acts 1997, No. 483.[2]
*507 As indicated by the Hayes decision (as well as the denoted recent amendments), the jurisprudential inclination to deny summary judgment has been turned aside. In effect, the enacted changes have “leveled the playing field” for the litigants, Hayes, supra, so that documentation submitted by the two parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. The indicated procedural amendments serve to bring Louisiana’s standard for summary judgment closely into alignment with Federal Rule of Civil Procedure 56. Id. In fact, summary judgment is today favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966A(2).
Incorporating the federal approach, La. C.C.P. art. 966 now states that if the movant points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden' of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence establishing that material facts are still at issue. Bockman v. Caraway, 29,436 (La.App.2d Cir. 04/02/97), 691 So.2d 815.
In the case sub judice, plaintiffs first contend that the provisions of La. R:S. 6:314 apply to trust deposits only. In pertinent part, this statute provides:
Trust deposits; death of a depositor, payment
A Upon the death of a depositor who has deposited a sum in any bank account evidencing an intention that upon the death of the depositor, the funds shall belong to such depositor’s spouse, or to one or more children or grandchildren of the depositor the bank may pay the deposit, together with the dividends or interest accruing thereto, to the person for whom the deposit was made. The depositor shall give to the depository bank an affidavit stating that all designated beneficiaries of such an account are within the required degree of kinship as provided herein, and the depository bank may rely conclusively thereon.
B. The title of' such an account must include the terms “in trust for”, “as trustee for”, or “payable on death to”, such beneficiary or beneficiaries. Such beneficiaries must be specifically named in the deposit account records oí the bank.
* * * * * *
E. No bank paying a beneficiary in accordance with this Section shall be liable to the estate or any heir of the decedent nor shall the account holder be liable for any estate, inheritance, or succession taxes which may be due the state, and delivery of the funds shall constitute a full and complete discharge of the bank for the payment or delivery so made and shall relieve the bank from all adverse claims thereto by a person claiming as a surviving or former spouse or a successor to such a spouse. No tax collector, creditor, heir, legatee, personal representative, or any other person shall have any right or cause of action against the financial institution on account of such payment, and R.S. 47:2410 shall not apply to such cases.
F. The provisions of this Section shall apply notwithstanding the fact the decedent designates a beneficiary by last will and testament. The provisions of this Section shall not prohibit any right of forced heirship or the collation or collection of funds due any spouse, heir, legatee, creditor, or other person having rights to claims to funds of the deceased depositor.
While indeed the caption of the section includes the term, “trust -deposits,” plaintiffs’ initial argument is refuted by the relevant statutory history. Granted, the 1984 version of La. R.S. 6:314 contemplated only a trust, i.e., the depositing of funds in trust for anoth *508 er. In 1991, however, the legislature amended and reenacted the statute to reflect a broadened scope of application. See Acts 1991, Reg. Sess., No. 535. That change is apparent upon comparing the earlier language, “[u]pon the death of a depositor who has deposited a sum in any bank in trust for another” (emphasis added), with the present “[u]pon the death of a depositor who has deposited a sum in any bank account evidencing an intention that upon the death of the depositor, the funds shall belong to such depositor’s ... one or more children....” Clearly too, while not eliminating trust deposits from the statute’s purview, Subsection B adds the “payable on death” option for a depositor and, thus, substantially expands the type of transaction encompassed within the measure.
Neither are we impressed with plaintiffs’ complaint that La. R.S. 6:314 effectively establishes a new method for making donations inter vivos or mortis causa without observing the formalities otherwise commanded by law, viz., an authentic act or the confection of a will. We first note that, as reflected by the designation itself, the pay-on-death account transfers nothing until the death of the depositor. Thus, plaintiffs’ concerns about an inter vivos transfer are clearly unfounded.
Regarding the validity of payable-on-death accounts not created with testamentary formality, the following observations are provided in the A.L.R. Annotation, “Payable-on-Death Account as Will,” 50 A.L.R.4th 272-300 (1986) 50 A.L.R.4th at 276:
In recent years, a number of states have enacted statutes specifically permitting a depositor to give notification to a bank that an account in his name is to be payable to a named person or persons on the depositor’s death, and providing further that an account in such form shall become the property of the named beneficiary on the depositor’s death, notwithstanding that the depositor has not complied with the formalities for a testamentary disposition required by the statute of wills [ ]. In considering these statutes, |sthe courts have recognized that P.O.D. savings accounts or certificates of deposit are valid, on the basis that the banking statutes authorizing P.O.D. accounts govern their validity rather than the law of wills [ ]. The Uniform Probate Code also recognizes the validity of the P.O.D. account.
See also Virginia National Bank v. Harris, 220 Va. 336, 257 S.E.2d 867 (1979) (very fact that legislature provided that bank may properly pay balance of P.O.D. account to surviving designee demonstrates validity of such account, even though not created with formalities specified for wills); Re Estate of Tonsic, 13 Ohio App.2d 195, 235 N.E.2d 239 (1968) (under provision of banking statute, P.O.D. deposits are exempt from statute regarding wills); In re Gubala’s Estate, 81 Ill.App.2d 378, 225 N.E.2d 646 (1967) (payment-on-death account not invalid because of noncompliance with statute of wüls). A similar legislative intent is clearly ascertainable from Subsection F of La. R.S. 6:314, directing that the enactment applies “notwithstanding the fact that the decedent designates a beneficiary by last will and testament.” [3] Still, while shielding the bank upon payment to the named survivor, the statute expressly reserves all existing rights of forced heirship and the collection of funds elsewise due heirs, legatees, and others.
Nor are we persuaded by plaintiffs’ expression of displeasure with the formal statutory compliance illustrated in the present matter. Bank employees testified to the customary use of “P.O.D.” as an abbreviation for “payable-on-death” when the document affords insufficient space for the complete title. Through documentation, the bank also established that procedure as an acceptable, general banking practice. Also, the previously cited annotation specifically observes that payable-on-death accounts are “sometimes abbreviated P.O.D. accounts.” 50 A.L.R.4th 272, 275 (1986). Beyond that, the meaning of “P.O.D.” is easily discerned here, when read in context with the affidavits of *509 kinship specifically designating the accounts as pay-on-death accounts.
We also reject plaintiffs’ complaint regarding the failure of the bank to have Carnahan fill out a signature card and a new account application. The provisions of La. R.S. 6:314 set forth no such, requirement. Plaintiffs even go so far as to argue that, to comply with the statute, the bank should have issued a new certificate of deposit, at the time Carnahan changed the account. We do. not read Subsection A so narrowly, however, that the relevant intent must be expressed solely at the time of deposit. Such an interpretation would not only discourage a depositor from changing his mind upon being confronted with the complicated process for opening a new account, but would also frequently subject the CD holder to substantial penalties under his governmentally required agreement restricting premature withdrawal. That approach fails to comport with the in-tendment of La. R.S. 6:314, and, instead, leads to absurd consequences.
Likewise, in urging the necessity for a written designation of beneficiary, plaintiffs mistakenly rely upon McDonald v. Treat, 268 Ark. 52, 593 S.W.2d 462 (1980). In that case, the pertinent Arkansas pay-on-death statute particularly included such a requirement. By contrast, La. R.S. 6:314 simply demands an affidavit of kinship, executed here in two instances by Jasper Carnahan to twice name Michael W. Carnahan as beneficiary.
Plaintiffs have also erroneously argued that the bank did not observe the statutory requirement that the beneficiary be specifically named in the deposit account records. Both the certificate of deposit and the affidavit of kinship, considered by the bank as portions of its account records, contain the name of the beneficiary. Employees of the institution further indicated that such an affidavit of kinship serves as the agreement to establish the P.O.D. account. The bank’s copy of the non-negotiable certificate of deposit read “P.O.D. Michael W. Carnahan.” We deem the term “deposit account records” to be inclusive of. such documents.
Finally, bank employee Sue Ashley’s attestation to Mr. Carnahan’s coherent and articulate state while executing the appropriate documents on June 17, 1995, amply demonstrates satisfactory establishment of the La. R.S. 6:314 accounts.
Conclusion
Accordingly, compliance with .the requirements of La. R.S. 6:314 having been established, the defendant bank is released, as a matter of law, from any liability to the Restate or heirs of the decedent. This decision does not affect the heirs’ rights pursuant to Subsection F. Hence, the trial court judgment granting summary judgment and dismissing the suit is affirmed at appellants’ costs.
AFFIRMED.

. The previous day, June 16, 1995, Michael had talked by phone with a bank vice-president about the options available to his father regarding the certificates. The son then informed the officer that, the next day, he and his father would be in the bank to take care of the details.

. Being procedural in nature, the 1997 amendments to La. C.C.P. art. 966 are subject to retro *507 active application. See NAB Natural Resources v. Willamette Industries, 28,555 (La.App.2d Cir. 08/21/96), 679 So.2d 477.

. H.R. Con. Res. 200, Reg. Sess. (La. 1997), among its other directives, observes that La. R.S. 6:314 presently “pemiit[s] bank account funds to be transferred to survivors without the necessity of probate proceedings.”