Cite as 2020 Ark. App. 466

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-910

| | |
|---|---|
| | **Opinion Delivered:** October 7, 2020 |
| LILLIAN MORRIS REICHERT AND BRENT D. MORRIS | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT [NO. 33CV-18-118] |
| APPELLANTS | |
| V. | |
| WILLIAM COLWELL | HONORABLE HOLLY L. MEYER, JUDGE |
| APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Separate appellant Lillian Morris Reichert appeals an Izard County Circuit Court order recognizing a resulting trust in favor of appellee William Colwell. Lillian argues that there was insufficient evidence to support the establishment of a resulting trust and that the equitable doctrine of laches bars William's claims. Because the existence of the resulting trust and the defense of laches hinge on the circuit court's determination of the credibility of the witnesses and weight of the evidence in this case, we affirm.

I.  *Background*

The parties to this action have a somewhat complicated relationship, which contributes to the dispute at issue. Separate appellant Brent Dewitt Morris[1] was married to

---

[1]Brent died after the notice of appeal was filed but prior to this case being submitted. His only interest in the disputed property was a life estate. Since his interest in the property was extinguished on his death, we hold that any issue related to his interest in the property

Betty Morris. Prior to her marriage to Brent, Betty gave birth to William, but he was adopted out at the age of four. During the marriage between Brent and Betty, Lillian was born. Thus, Lillian and William are half siblings and share the same mother, Betty, but have different fathers.

In 1996, William sought out and reconnected with Betty and developed a relationship with Lillian and Brent. At that time, Brent and Betty owned the property in dispute. In 1998, Brent and Betty discussed selling their home with William. They agreed on a purchase price of $60,000, but William wanted Brent and Betty to remain in the home. William paid the $60,000 purchase price,[2] and Brent and Betty issued a warranty deed. The 1998 warranty deed is at the center of this litigation. The 1998 deed listed Brent and Betty as grantors and William and Lillian as grantees but did not reserve a life estate for either Brent or Betty. William and Lillian disagree on the intent and the legal effect of the 1998 deed.

William maintains that he paid the entire purchase amount for the disputed property. While he admits that he had Lillian's name placed on the deed, William insists that he never intended for her to have an ownership interest. Rather, he contends that Lillian held the property in a resulting trust. Lillian maintains that she paid one-half of the purchase price for the property and that she owns a one-half interest in the property. The circuit court

_____

is moot. As such, we address only those facts and issues that relate to the validity of Reichert's interest in the property.

[2]William and Lillian agree that William paid the $60,000 purchase price but disagree on whether Lillian repaid him one-half, or $30,000.

concluded that the property was subject to a resulting trust and that William owned the disputed property in fee simple subject to a life estate in Brent.[3] The circuit court then ordered Lillian to convey her interest in the property to William. Lillian now appeals, alleging that the circuit court erred in finding the existence of a resulting trust and in finding that William's claims were not barred by laches.

## II. *Standard of Review*

Lillian argues that the circuit court erred in finding that the property was subject to a resulting trust. A resulting trust is an implied trust; it arises by operation of law, not out of an express agreement, but out of the circumstances surrounding the transaction, indicating that the beneficial interest is not to go with the legal title. *Henslee v. Kennedy*, 262 Ark. 198, 202–03, 555 S.W.2d 937, 938–39 (1977) (citing *Harbour v. Harbour*, 207 Ark. 551, 181 S.W.2d 805 (1944)); *see also Darsow v. Landreth*, 236 Ark. 189, 365 S.W.2d 136 (1963). A resulting trust is presumed to arise in favor of one who pays or secures the purchase price for land when the deed is taken in the name of another. *Id*. In general, a trial court must find a resulting trust proved by clear and convincing evidence. *Edwards v. Edwards*, 311 Ark. 339, 843 S.W.2d 846 (1992). On appeal, we do not decide whether clear and convincing evidence supports the circuit court's findings. Instead, we determine whether the findings are clearly erroneous. *Hearne v. Banks*, 2009 Ark. App. 590, 376 S.W.3d 444. A finding is

---

[3]Because Betty died in 2009, any interest she had in the property had already been extinguished. Despite declaring that Brent was entitled to a life estate in the property, the court failed to order that a new deed be filed identifying his interest in the property. Ordinarily, this would raise a finality issue; however, because Brent died during the pendency of this appeal and his interest in the property was extinguished upon his death, any such error was rendered moot.

clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Farm Credit Midsouth, PCA v. Reece Contracting, Inc.*, 359 Ark. 267, 196 S.W.3d 488 (2004). On appeal, we do not disturb disputed facts and determinations of credibility, as these are within the province of the fact-finder. *Id.* With these standards in mind, we turn our attention to the evidence before the circuit court.

III. *Analysis*

The circuit court here was presented conflicting testimony regarding why Lillian's name was initially placed on the deed in 1998. According to William, he paid $60,000 for the property and placed Lillian's name on the deed only to reassure everyone that he would not sell the house out from under Brent and Betty. He claims he never intended for Lillian to have a beneficial interest in the property. Then, shortly after putting Lillian's name on the deed, their relationship soured, and William decided to have Lillian's name taken off the property.

William claims he discussed this decision with Brent and Betty. This caused Brent and Betty to draft and execute another warranty deed purporting to convey the entirety of the disputed property to William alone and reserving a life estate for themselves. This new deed was filed in May 1999. William says he thought that the 1999 deed resolved the issue because it granted him fee simple in the property subject to Brent and Betty's life estate, and because Lillian's name was no longer on the deed. William continued with this belief until 2018. In 2018, while attempting to get his affairs in order, William discovered that the 1999 deed was invalid.

4

William contacted Brent once again.[4] Upon learning that the 1999 deed was invalid, Brent contacted an attorney to have the deficiencies corrected. Lillian was present when Brent met with the attorney. As a result of their discussions, the attorney prepared two deeds. The first deed transferred Lillian's interest in the property to William and removed Lillian's name from the deed. The second deed granted a life estate in the property to Brent. Lillian refused to sign the deed transferring the property to William.

Based on this evidence, William asserts that Lillian was included on the 1998 deed solely as a placeholder for Brent and Betty's life-estate interest. He further claims that Lillian did not provide any of the money used to purchase the property, that she did not have a beneficial interest in the property despite her name being on the deed, and that she had agreed to convey her interest to him but ultimately refused to do so.

Lillian's version of events was quite different. While Lillian admits that William paid the $60,000 purchase price for the property initially, she claims that she subsequently gave William $30,000 in cash for her half of the property. She testified that her fiancé at the time, who was a gambler and a businessman with access to large sums of cash, retrieved $30,000 from a hotel-room safe, converted the funds into $100 bills, and placed it in a briefcase, which she handed the over to William at a gas station in Houston, Texas. Thus, she claims the evidence shows that she jointly purchased the property with William, subject to a life

---

[4]Betty died in 2009.

5

estate in favor of Betty and Brent. Upon cross-examination, however, she admitted that she had no physical proof of any such payment.[5]

Faced with this conflicting evidence, the circuit court found William's version of events to be credible and Lillian's version not credible. Specifically, the circuit court stated it did not believe Lillian's testimony concerning her alleged payment of $30,000 and found her testimony concerning the 2018 deeds to be in conflict with the testimony provided by the attorney who drafted the deeds.[6] As to William's credibility, the court found his testimony of the purchase payment and his theory of a resulting trust to be supported by the credible weight of the evidence.

We note that here, the circuit court was presented with undisputed evidence from both William and Lillian that the parties intended for Brent and Betty to have a life estate in the property. Despite this undisputed intent, the 1998 deed did not delineate or effectuate this intent. However, just one year later, Brent and Betty seemingly attempted to rectify this situation and executed a deed retaining a life estate and attempting to transfer the property solely to William. The circuit court found that the actions of Brent and Betty in executing the 1999 deed were significant. The court found that the 1999 deed was an apparent attempt to clarify the parties' ownership interest in the property and supported William's claim that the only purpose of the 1998 deed was to transfer the ownership of the

---

[5]We note that William could not produce a copy of the $60,000 check used to purchase the property. However, Lillian never disputed that he made this initial payment, so his failure to present proof of this payment is not material to this analysis.

[6]The attorney's "testimony" was stipulated to and submitted by way of letters between the attorney and William's counsel.

property to himself and that Lillian was merely a placeholder for Brent and Betty's life-estate interest. Likewise, the circuit court found that Brent's actions in 2018 to place the property solely in William's name and reserving a life estate were significant and corroborated a resulting trust.

The circuit court, in attempting to determine the true nature of the transactions in this case, correctly considered all the written and oral evidence and focused on the intent of the parties in light of all attendant circumstances. *See Bright v. Gass*, 38 Ark. App. 71, 831 S.W.2d 149 (1992). In coming to its conclusion that a resulting trust was created, the court explicitly found Lillian's testimony and evidence to be self-serving and not credible. Moreover, in such cases as this where the testimony on behalf of the parties is almost totally in conflict, we must defer to the circuit court's judgment as to the credibility of the witnesses. *See Betts v. Betts*, 326 Ark. 544, 932 S.W.2d 336 (1996); *Bramlett v. Selman*, 268 Ark. 457, 597 S.W.2d 80 (1980). With that in mind, we cannot say that the circuit court's findings and conclusions are clearly erroneous.[7]

Despite these credibility findings, Lillian asserts that a resulting trust could not have been created and that the court erred in its finding of a resulting trust. First, she argues that William's testimony that he gave her a one-half interest in the property in 1998 negates his

---

[7]We note that Lillian makes a statute-of-frauds argument in her brief with respect to any affirmation of the circuit court's decision based on contract and/or specific performance. The circuit court held that a resulting trust was created, and constructive and resulting trusts are specifically exempted from the application of the statute of frauds. *See* Ark. Code Ann. § 4-59-103(b) (Repl. 2011). Because we affirm that decision, we need not address this argument.

claim that he intended to create a resulting trust.[8] We disagree. Admittedly, on cross-examination, William testified that by placing Lillian's name on the 1998 deed, she was part owner from a legal standpoint. He, however, clearly testified and steadfastly maintained that he never intended to give Lillian a beneficial interest in the property; instead, he included her name on the deed only to reassure Brent and Betty that he would not sell the property while they were alive.

Second, she asserts that William failed to inform her of his intent to create a resulting trust and instead provided her with a deed granting her a one-half interest in the property. Even if true, William's failure to express his intent to create a resulting trust to Lillian does not disprove his claim. A resulting trust arises by operation of law and may arise despite the fact that there is no manifestation of intention to create an express trust. *Henslee, supra.*

Third, citing *Coffelt v. Decatur School District*, 212 Ark. 743, 208 S.W.2d 1 (1948), Lillian argues that the need for a resulting trust was obviated by the plain language of the 1998 deed, which was prepared at the direction of the purported trustor, William. *Coffelt* is not controlling. *Coffelt* did not involve a claim of an implied trust, which is an equitable remedy. We have also noted that parol evidence of oral declarations or of the circumstances under which the transfer is made is admissible to show the payor's intent. *Walker v. Hooker*, 282 Ark. 61, 667 S.W.2d 637 (1984) (citing Restatement (Second) of Trusts § 443 cmt. a (1959)).

---

[8]We note this gift theory contradicts Lillian's claim to have purchased the property and assume that it is made only in the alternative.

Lastly, Lillian alleges that William was aware of her claim to the property as early as 1999 and that his claims are barred by the equitable doctrine of laches. The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *See, e.g.*, *Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007). It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them; that by reason of his delay, some adverse party has good reason to believe that those rights are worthless or have been abandoned; and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *See id.* The laches defense requires a detrimental change in the position of the one asserting the doctrine as well as an unreasonable delay by the one asserting his rights against whom laches is invoked. *See, e.g.*, *Felton v. Rebsamen Med. Ctr., Inc.*, 373 Ark. 472, 284 S.W.3d 486 (2008). The application of the doctrine to each case depends on its particular circumstances. *See, e.g.*, *Royal Oaks Vista, L.L.C. v. Maddox*, 372 Ark. 119, 271 S.W.3d 479 (2008). The issue of laches is one of fact, and a reviewing court does not reverse a circuit court's decision on a question of fact unless it is clearly erroneous. *See id.*

Here, the circuit court's denial of Lillian's laches claim was essentially based on its credibility findings. William testified that he had Lillian placed on the deed only to protect Betty and Brent's interest. In 1999, he sought to have Lillian taken off the deed. He testified that she had agreed, provided that he put the life estate in writing. He agreed to the life estate, and the 1999 deed was recorded and filed. William testified that at that point, he assumed all was taken care of—Lillian was off the deed, and the Morrises had a life estate,

9

which he claims is what he intended in the first place. Admittedly, William took no action from 1999 until 2018 when he discovered that the 1999 deed was ineffective. He again tried to fix the "error"; but Lillian refused to sign the documents and claimed an actual interest in the property, which resulted in this litigation. Lillian's version of events conflicted with William's version. The court, however, once again found her to be not credible. As with its credibility determination that a resulting trust was created, the circuit court's credibility determination in this regard is also not clearly erroneous. Furthermore, the circuit court was not convinced that Lillian had experienced a detrimental change in her position, making the doctrine of laches inapplicable. We find no error in this regard.

Because there was sufficient evidence to support the court's conclusions, we affirm.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Jeremy B. Lowrey*, for appellants.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*; and *Jeff Dobbins*, for appellee.