MAGALE *v.* FOMBY.

Opinion delivered February 4, 1918.

1. BANKS AND BANKING—IMPROPER CONDUCT OF DIRECTORS—RELIEF—EQUITY JURISDICTION.—Independently of statute equity has jurisdiction in an action involving the negligence of directors in the discharge of their duties, to afford redress to the corporation and in proper cases to its shareholders.

2. BANKS AND BANKING—MISCONDUCT OF DIRECTORS—ACTION TO RECOVER LOSSES BROUGHT IN WHOSE NAME.—Actions to recover losses caused by the mismanagement of a bank by the directors should be brought, in general, in the name of the corporation, but if it refuses to prosecute the action the stockholders, who are the real parties in interest, will be permitted to sue in their own names.

3. BANKS AND BANKING—MISCONDUCT OF DIRECTORS.—The directors of a bank loaned to a canning factory a large sum of money, without requiring the borrower to give any security. The borrower was dependent upon its profits to repay the loan, and it was continually operated at a loss; *held*, the directors were guilty of negligence in the management of the bank.

4. BANKS AND BANKING—MISCONDUCT OF DIRECTORS—LIMITATIONS.—Directors of banks are not trustees of an express trust, within the rule exempting such trusts from the operation of the statute of

limitations, but they are trustees of an implied trust and are within the protection of the statute.

5. CORPORATIONS—ACTION AGAINST DIRECTORS FOR MISCONDUCT—LIMITATIONS.—An action in equity by the stockholders of a corporation against the directors, for misconduct, must be brought within the time in which the corporation itself should have brought the suit; and this rule obtains where a stockholder is a minor.

Appeal from Columbia Chancery Court; *James M. Barker,* Chancellor; affirmed.

*Gaughan & Sifford,* for appellant.

1. The directors were liable for mismanagement and neglect. 129 Ark. 416; 168 N. Y. 157, 110 Ark. 40; 92 *Id.* 327.

2. No demand on the president and board of directors to bring this suit was necessary, as they were the guilty parties. 96 Ark. 281; 126 Ark. 72; 2 Cook on Corp., § 701.

3. The suit was not barred by limitation. Plaintiffs had no knowledge of the loss. 71 Ark. 382; 196 S. W. 803; 39 L. R. A. (N. S.) 173; 97 N. E. Rep. 897.

*Stevens & Stevens,* for appellees.

1. The demurrer was properly sustained. There was no gross negligence nor breach of trust. 104 U. S. 450, 460; 8 S. W. 886; 17 Fed. 46; 96 Ark. 291; 126 *Id.* 72; 96 *Id.* 281; 104 Ark. 84. There are no allegations nor proof of fraud. Negligence must be proven. 15 L. R. A. 316; 18 Atl. 824; 46 N. J. Eq. 25. See also 75 Fed. 781; 15 L. R. A. 317; 55 *Id.* 775 and notes.

2. Mrs. Magale is estopped. She was informed of condition. She had no personal interest in the funds. 15 S. W. 449, 452; Cook on Stock, etc. (2 Ed.) 701.

3. The action is barred. Morowitz on Corp., § 271; 15 S. W. 448; 39 L. R. A. (N. S.) 49; 29 C. C. A. 529; 36 *Id.* 402. Directors are not express trustees. 15 S. W. 453; Morowitz on Pri. Corp., 271, etc. They are only gratuitous mandatories and only liable for fraud or gross negligence. 19 L. R. A. 316; 6 S. W. 586; 141 U. S. 133. See also 195 S. W. 674; 94 Ark. 429; 92 *Id.* 359, etc.

This is a suit in equity brought by Mrs. Mary G. Magale and John F. Magale, as stockholders of the Columbia County Bank, against C. M. Fomby and others, as directors of said bank, to recover for the bank for the benefit of its creditors and other stockholders, the sum of $30,000 for which they allege that the directors are liable by reason of their neglect and mismanagement of the affairs of the Bank in the respect averred in their complaint. The material facts are as follows:

In the early part of the year 1909, a corporation was organized at Magnolia, in Columbia County, Arkansas, for the purpose of operating a canning factory, and at once began doing business with the Columbia County Bank of the same place. J. O. Hutcheson was cashier of the bank and had $4,000 stock in it. He became a stockholder of the Magnolia Canning Factory and had $500 stock in it. C. M. Fomby was president of the bank. He had $3,000 stock in it and $100 stock in the canning factory. At the time the bank commenced to do business with the canning factory, the following were directors of the bank: R. L. Emerson, C. M. Fomby, A. B. Murphy, J. O. Hutcheson, C. R. Hutcheson, J. E. Smith, S. O. Couch, T. J. Blewster, D. R. Carrway, J. M. Witt, W. H. Aschew, C. W. Mitchell and J. C. McNeil. Since the institution of this suit the following of those named have died: A. B. Murphy, W. H. Aschew, A. J. Carter and R. L. Emerson. The balance of those first named, except J. E. Smith and S. O. Couch, served as directors from then on until the bringing of this suit.

T. J. Blewster had $110 of the canning factory stock and $1,000 of the bank stock. The cashier of the bank was a director in both companies, as were also T. J. Blewster and J. O. Hutcheson. A. J. Carter was president and T. J. Blewster was secretary of the canning factory. A. J. Carter became a director of the bank in 1910, and remained as such until his death in the year 1914. The property of the canning factory consisted of a

canning outfit, buildings and machinery. The buildings were placed on leased lands so as to be near the railroad track and no provision was made for the removal of the buildings at the termination of the lease. The lease was for a period of nine years from August, 1908, at the price of fifty dollars per year. The canning factory had a capital stock of $10,500 which was paid up at the time it began to do business. The bank had a capital of $50,000 which was all paid. The original capital stock of the canning factory was expended in the erection of the buildings and the purchase of machinery in the preparation of operating its plant. The first loan from the bank to the canning factory was in the spring of 1909. This money was spent in buying machinery and getting ready for business. On the first of January, 1910. the canning factory was indebted to the bank in the sum of $13,497.00. At the close of January, 1911, the indebtedness was $20,-314.00. On the first of January, 1912, the canning factory owed the bank $29,421.04. The indebtedness was evidenced by the notes of the canning factory, overdrafts and accounts. No security was given until the latter part of 1911, when the canning factory gave the bank a mortgage on its buildings and machinery. No profit was ever made on operating the canning factory. During all this time it was operated at a loss. The bank stopped business with the canning factory on December 15, 1911, and at that time the canning factory had very little manufactured goods on hand. The bank first took a mortgage for the whole amount of the indebtedness, but later on charged off $16,000.00 and took a new mortgage for the balance in 1913. Later on the stockholders of the bank paid this amount, which was something near $13,000, at the suggestion of the State Bank Examiner, in order that the bank might make a better showing. Mrs. Mary G. Magale gave her note for $1,000.00 of this amount and subsequently paid it.

J. O. Hutcheson was a director in both corporations. He testified that he talked with Mrs. Magale several times about the indebtedness of the canning factory to

the bank; that he had his first conversation with her early in 1912, and later talked with her several times about it during the year.

J. C. McNeil, the cashier of the bank, testified that he talked with Mrs. Magale about the business with the canning factory in the years 1910, 1911 and 1912; that she frequently asked him about the bank's business and how the canning factory was getting along; that she talked with him frequently in the year 1912, and knew that the canning factory owed the bank a considerable debt and that there would be a loss.

Mrs. Magale denied that she knew anything about the indebtedness of the canning factory to the bank until the bank made a statement sometime in 1914. She said she gave her note for one thousand dollars with the understanding that she was to be paid back. At the time the suit was instituted, Mrs. Mary G. Magale owned eighty shares of stock in the bank of the par value of $2,000. Her son, J. F. Magale, owned $2,000 of the stock. The suit was filed on October 15, 1915. John F. Magale, at this time, was nearly twenty-three years of age. During 1912 and 1913, the canning factory was operated independently of any assistance from the bank, that is, the persons operating it guaranteed the bank from any loss and agreed to pay the profits, if any, upon the old indebtedness to the bank. No profits, however, were made and no payment was made upon the old indebtedness. H. D. Hutcheson was the manager of the canning factory during these years and he had no connection with the bank. The losses sustained by the canning factory were due to the hazards of the business rather than to any mismanagement of its officers. The record shows that the officers bent every energy toward making the canning factory a successful financial venture, but the losses occurred on account of the canning factory undertaking to raise products to be used in running its business and from the failures in the crops and from other hazards connected with its business.

The court found the issues in favor of the defendants and a decree was entered dismissing the complaint for want of equity. The plaintiffs have appealed.

HART, J., (after stating the facts).

(1-2)  The cause. of action set forth in the complaint is cognizable in a court of chancery. The liability of the directors of the bank for negligence in the discharge of their duties and the jurisdiction of courts of equity to afford redress to the corporation, and in proper cases to its shareholders, in cases of this sort·exists independently of any statute. *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S. W. 803. Actions to recover such losses should in general be brought in the name of the corporation, but if it refuses to prosecute the action, the stockholders who are the real parties in interest, will be permitted to sue in their own names. In the present case it appears that the corporation was still under the control of the directors who are defendants to the action. The president of the corporation stated that they would not have brought the action for the corporation, and the demand upon the corporation to have brought the suit would have been futile and unnecessary. A suit prosecuted under the direction and control of the parties against whom the misconduct is alleged and a recovery is sought, would not afford the shareholders the relief to which they are entitled. If the stockholders could not be allowed to assert their own rights in a court of equity, the directors so long as they remained in office, could hold them in defiance and their wrongful acts might lead to the wreck of the corporation.

(3)  Again it is argued that the officers were not liable. In the case of *Bank of Commerce* v. *Goolsby,* *supra,* it was held that the directors of a bank, constituting its governing body, are liable to stockholders as well as depositors for its losses from their negligence in not knowing its condition and seeing that its affairs are honestly and properly managed. In the present case the capital stock of the canning factory was $10,500, and the

capital stock of the bank was $50,000. The capital stock in both corporations was fully paid up. The capital stock of the canning factory was all used in the erection of buildings and the purchase of machinery for the conduct of its business. They even borrowed an additional amount of $1,200 which was used in the purchase of machinery before it began business. Its business for the year 1909 resulted in a loss, so that on the first day of January, 1910, its indebtedness to the bank was $13,-497.00. The bank with the knowledge and consent of the directors continued to make loans to the canning factory until on January 27, 1911, the indebtedness amounted to $20,314.00. The directors still continued to make loans to the canning factory until on January 1, 1912, the indebtedness of the canning factory to the bank amounted to $29,421.04. No security was demanded or received on this indebtedness. It is true the bank took a mortgage on the buildings and machinery of the canning factory in the latter part of 1911, but this was done in order to protect the bank from any future losses arising from the operation of the canning factory. It does not appear that the directors of the bank are guilty of any actual fraud in making the loans to the canning factory. On the contrary, it appears that they believed the business would be successful. It is not shown, however, that any of them had had any experience in operating a canning factory. It turned out to be a hazardous business and one that required skill and experience on the part of those managing it in order to make it a success. It is true the canning factory owned its own buildings and machinery, but it placed them upon leased ground for a term of nine years without any provision in the lease that it should be permitted to move its buildings at the expiration of its term. It is a significant fact that during the three years the bank did business with the canning factory the latter became indebted to it in a sum nearly equal to three-fifths of the bank's capital stock. During these three years no security was demanded or received by the bank from the canning factory. The directors

loaned large sums of money to an enterprise which depended entirely upon its profits for a repayment of the loan. These facts the directors of the bank must have known. Under the circumstances they were guilty of such reckless conduct in the management of the affairs of the bank as to constitute negligence within the meaning of the principles of law decided in *Bank of Commerce* v. *Goolsby, supra.*

(4) It does not follow, however, that the plaintiffs are entitled to recover in this case. The defendants rely upon the statute of limitations of three years to defeat the action. Sec. 5064 of Kirby's Digest provides that all actions founded upon any contract or liability, expressed or implied, not in writing, shall be commenced within three years after the cause of action shall accrue. In some jurisdictions as in the State of Massachusetts, the court has held the directors to be trustees in whose favor the statute does not run during the continuance of the trust. *Greenfield Savings Bank* v. *Abercrombie et al.,* 39 L. R. A. (N. S.) 173. In other jurisdictions it is held that directors of banks are not trustees of an express trust within the rule exempting such trusts from the operation of the statute, but that they are trustees of an implied trust and are within the protection of the statute. *Baxter* v. *Moses,* 77 Maine 465, 52 Am. Rep. 783; *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630, 15 S. W. 448, 24 Am. St. Rep. 625, and *Cooper* v. *Hill* (Ct. Ct. Appeals, 8th Circuit) 94 Fed. 582. This court has adopted the latter view. *Bank of Commerce* v. *Goolsby, supra.* It was there held that the trust with which the property of the bank was impressed in the hands of directors arises from the common law and from their acceptance of the office they hold. In other words while there is no express declaration of trust, their liability in cases of this sort is implied from their official relation to the bank and there is an implied or resulting trust created by operation of law when they became directors of the bank. In the case of *Bank of Commerce* v. *Goolsby, supra,* the court said:

"The duties of directors are perhaps nowhere better stated than in a syllabus, showing the holding of the court, in *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 631, 15 S. W. 448, 24 Am. St. Rep. 625, as follows: "Bank directors are held to the exercise of only ordinary care and diligence in the discharge of their duties. They are not required to give their whole time and attention to the performance of these duties, but only so much as, under the special circumstances of each particular case, may be demanded for the reasonable protection of the interests committed to their care. They are not insurers of the fidelity or capacity of the cashier or other agents to whom the business and assets of the bank may be intrusted, but are required to exercise due care in their selection and proper supervision over their action."

In the Tennessee case just referred to, as well as the other above cited with it on this point, it was held that the statute of limitation may be invoked in their defense by directors in suits like the one under consideration. In the present case there has been no fraudulent concealment of their acts by the directors that would delay the operation of the statute of limitations. The cashier of the bank testified that he had frequent conversations with Mrs. Magale about the affairs of the bank and the condition of the canning factory during the years 1909, 1910 and 1911. In the latter part of December, 1911, the transaction of the bank with the canning factory was closed up and a mortgage was taken upon the buildings and machinery of the canning factory to secure the indebtedness. After that the canning factory was operated under a different management and under a guarantee that the bank should not suffer any further loss. One of the directors of the bank says that he talked with Mrs. Magale in the early part of 1912, and told her about the conditions as they then existed; that he thereafter during the year 1912 had frequent conversations with her in regard to the condition of the affairs of the bank and the canning factory. It is true Mrs. Magale denies that she had any knowledge of the condition of the affairs

between the bank and the canning factory until the bank issued a statement in 1914. Opposed to her testimony, however, is the testimony of the cashier of the bank and one of its directors. When we consider that the bank and the canning factory were both situated in the town of Magnolia and that Mrs. Magale lived there, a preponderance of the evidence shows that she had knowledge of the conditions as they existed. This suit was not commenced until October 15, 1915. This was more than three years after the transaction under consideration had been closed up and Mrs. Magale had knowledge of that fact. No acts of negligence on the part of the directors occurred within three years before the bringing of the action and their liability implied from their relation to the bank is barred by the statute of limitations.

It follows that the decree must be affirmed.

HART, J., (on rehearing). In the case of *Bank of Commerce* v. *Goolsby,* 129 Ark. 416, 196 S. W. 803, cited in our original opinion, it was held that where a statute places banking corporations under the control of boards of directors, corresponding duties and liabilities, in the absence of any statute, must be ascertained and controlled by common law rules applicable generally to their relations and powers. So we held (there being no statute defining their liabilities) that it rested on the implied liability created under the law by the relation of the directors, as its officers, to the bank. The transaction of the bank with the canning factory so far as the negligence of the directors is concerned was closed when the bank had a settlement with the canning factory, took a mortgage to secure it for the balance due it, and refused to make any further advances to it. This occurred in December, 1911. Thereafter other persons leased the plant of the canning factory and operated it. It is true they secured a loan from the bank but they did this wholly on their personal endorsement just as any third person might do and neither the canning factory as a corporation, nor its assets

were in any way involved. Therefore, we adhere to the ruling in our original opinion that the statute of limitations began to run in December, 1911.

(5) John F. Magale was a minor at the time the suit was brought. He was a stockholder of the bank and joined with his mother in bringing the suit. On account of his minority, it is claimed that the statute of limitations has not run against his cause of action and that a rehearing should be granted as to him. The proper mode of enforcing the liability of the directors in a case of this sort is by a suit in equity on behalf of all the creditors and in which the corporation itself is a party. Clark & Marshall on Private Corporations, Vol. 3, Par. 832, p. 2643, and Mitchie on Banks and Banking, Vol. 1, Sec. 55 (3).

In Cook on Corporations (7th Ed.), Vol. 3, par. 701, it is said: "The usual and proper remedy is for the corporation itself to institute a suit at law against the guilty directors. If, however, the corporation is under the control of the guilty parties, or if it refuses to sue when requested by stockholders to do so, then the stockholder himself may bring suit in equity in his own behalf, and in behalf of all other stockholders who may wish to come in, making the corporation and the guilty parties the defendants, and compel them to make good to the corporation the corporate money or property lost by their negligence. The money or property recovered in such an action belongs to the corporation, and not to the stockholder who brings the suit."

Hence it will be seen that the suit when instituted by the stockholder is a derivative one and for that reason must be brought within the time in which the corporation itself should have brought the suit.

It follows that the motion for rehearing will be denied.