## In re SUNRISE SECURITIES LITIGATION.

**This Document Relates to: All Actions.**

**M.D.L. No. 655.**

United States District Court,
E.D. Pennsylvania.

July 31, 1991.

---

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., Squire, Sanders & Dempsey, Washington, D.C., for plaintiff.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

### I. Introduction.

In my Memorandum and Order of May 31, 1989, I referred certain discovery issues regarding production of documents to the Special Master. Section XIII of the May 31 Memorandum referred to the Special Master post-receivership loan work-out documents. I requested that the Special Master review these documents for relevance and if the documents are relevant, determine whether a reasonable accommodation could be drawn between relevance and burdensomeness of production.

---

1. I use the term defendants collectively as a convenience to refer both to the "Certain Defendants", meaning the former directors and officers of Old Sunrise, and Old Sunrise's auditors, Deloitte, Haskins & Sells.

2. The FDIC filed its objections to the Special Master's Report and Recommendation on

The Special Master submitted his Report and Recommendation on February 15, 1991. The Report concludes that the documents are relevant and recommends that the burden of their production does not outweigh their relevance. The Federal Deposit Insurance Corporation ("FDIC") has filed lengthy objections to the report which the defendants[1] have answered in kind.[2]

I have reviewed the Special Master's Report and recommendation and the parties' submissions. With the limited exceptions set forth below, I concur fully with the Special Master's extensive and well-reasoned analysis and conclusions. I will therefore approve and adopt the Report and Recommendation with certain modifications.

### II. Discussion.

#### A. *Proximate Cause.*

In the Report and Recommendation, the Special Master concluded that the post-receivership loan workout documents—appraisals, business plans and bids—referred to him in the May 31, 1989 Memorandum and Order were relevant to the FDIC's burden of proving defendants' liability and consequent damages. *See* Report and Recommendation, at 8–13. In reaching this conclusion, the Special Master specifically rejected the FDIC's contention that because I have previously dismissed the defendants' counterclaims and affirmative defenses alleging contributory negligence on the part of FDIC and its corporate predecessors, the documents in question cannot be relevant. For the reasons set forth below, I agree fully with the Special Master's conclusion that the documents are relevant. However, because there may continue to be some dispute over the role which the concept of "proximate cause" in

March 25, 1991. The Certain Defendants filed their response to the FDIC's submission on May 10, 1991. Deloitte, Haskins & Sells filed its response to the FDIC's submission on May 14, 1991. On June 3, 1991, the FDIC filed its reply to the Certain Defendants May 10, 1991 submission.

this case, I write to provide my views on the subject.

The FDIC does not dispute that as plaintiff it has the burden of proving that conduct of the defendants proximately caused the claimed losses. *See* Objections of the [FDIC], at 12, 19. However, the FDIC argues that the defendants are attempting to bring in contributory negligence and mitigation defenses under the guise of proximate cause. The defendants reply that they can be liable only for those losses which they caused, and that any evidence which may be relevant to whether another actor or factor caused the loss is relevant.

The FDIC relies on *FSLIC v. Roy*, No. JFM–87–1227, 1988 WL 96570, 1988 U.S.Dist. LEXIS 6480 (D.Md. June 28, 1988) in support of its argument that the post-receivership documents are not relevant to the issue of proximate cause. In *Roy*, the Court struck the defendants' affirmative defenses of contributory negligence and mitigation:

> If officers and directors have negligently recommended and approved a significant number of loans in their institution's portfolio (a fact which may be assumed here since otherwise the question of proximate cause would be irrelevant), they must have breached this duty. One of the proximate results of this breach is that FSLIC must assume control over the affairs of the institution. FSLIC has been created for the purpose of preserving the integrity of the national banking system by providing an insurance fund to cover the deposits of failed and failing institutions. FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster. Self-evidently, it is the public which is the intended beneficiary of FSLIC, just as it is the public which is the beneficiary of the common law duty imposed upon officers and directors to manage properly the institutions entrusted to their care. Thus, nothing could be more paradoxical or contrary to sound

policy than to hold that it is the public which must bear the risk of errors of judgment made by officials in attempting to save a failing institution—a risk which would never have been created but for the defendants' wrongdoing in the first instance. Yet this is precisely what the consequence would be if, as defendants contend, they are permitted to assert claims, either directly or indirectly by way of defense, against FSLIC's insurance fund.

*Id.*, slip. op. at 2. A number of District Courts have followed *Roy* without discussion of the proximate cause issue. *See FDIC v. Carlson*, 698 F.Supp. 178 (D.Minn. 1988); *FDIC v. Greenwood*, 719 F.Supp. 749 (C.D.Ill.1989); *FDIC v. Baker*, 739 F.Supp. 1401 (C.D.Cal.1990); *FDIC v. Oakes*, 1989 WL 151954, 1989 U.S.Dist. LEXIS 14978 (D.Kan. Nov. 3, 1989).

I decline to follow the *Roy* line of authority for two reasons. First, in my view, the *Roy* Court and the FDIC have confused FDIC's status as a party plaintiff with its potential status as a causative factor in the losses which it claims. Proximate cause and contributory negligence are separate and distinct concepts in any case. In order to prove its negligence claims, for example, the FDIC must demonstrate first that the defendants [3] were negligent and second that such negligence was a proximate cause of the losses sustained. In their defense, the defendants may argue that the FDIC has not made out a *prima facie* case because it has failed to demonstrate proximate cause. *See FDIC v. Renda*, 692 F.Supp. 128, 133 (D.Kan.1988). The defendants may contend that any one of a number of causal factors were the proximate cause of the losses, including the conduct of the FDIC. Thus, because the post-receivership documents may be relevant to the issue of who or what was the proximate cause of the claimed losses, I conclude that the documents must be produced.

---

**3.** I use the plural term "defendants" in this example solely for ease of reference. Obviously, nothing in this hypothetical is meant to express any opinion on the merits of the FDIC's substantive case against any defendant.

Second, in my view the *Roy* Court's consideration of "sound policy" is inappropriate. Courts are not empowered to abrogate established rules of law so as to expand parties' liability retroactively based solely on policy considerations. Such action must come from Congress. *See FDIC v. Jenkins*, 888 F.2d 1537, 1546 (11th Cir. 1989).[4]

### B. *Burdensomeness of Producing Subcontractor Files.*

■ FDIC contends that production of the subcontractor files would be unduly burdensome. After consultation with the Special Master and review of the parties' arguments, I conclude that the FDIC is correct. Therefore, I will relieve the FDIC of its obligation to produce subcontractor files in general. If during the course of discovery, the defendants are able to demonstrate a particularized need for a specific group or groups of these files, they may make application to the Court for an Order requiring their production.

### C. *Privilege Issues.*

I am distressed by the parties' treatment of the attorney-client and work-product issues which relate to the Section XIII documents. This issue was not specifically referred to the Special Master in the May 31, 1989 Memorandum. However, because the Special Master was aware that the privilege issues might delay production of the Section XIII documents, the Special Master solicited submissions from the parties on the issues.

The parties submitted numerous letters to the Special Master on the privileges issue. FDIC submitted letters dated March 21, April 27 and July 3, 1990. Defendants submitted letters dated April 18, June 22, and July 23, 1990. On February 12, 1991, I specifically referred the privilege questions concerning the Section XIII documents to the Special Master. In the February 15 Report and Recommendation, the Special Master devotes over 20 pages to the privileges issue.

In its Objections to the Report and Recommendation, the FDIC revealed for the first time to the Court that the parties had resolved the issue of pending claims of attorney-client and work-product protection "[a]s reflected in an exchange of letters from FDIC's counsel dated November 21, 1990 and from defendants' counsel dated December 6, 1991[sic]." Objections of the [FDIC] to the Special Master's February 15, 1991 Report and Recommendation, at 49. The parties never informed the Special Master that they had resolved the privileges issue.

■ As a result of the parties' oversight, the Special Master and the Court have expended significant amounts of time and effort unnecessarily. More importantly, to the extent that unresolved document production issues have contributed to the delay in commencing non-custodial depositions, the parties' inadvertence has added to the delay because the Report and Recommendation could have been issued significantly sooner had the Special Master been relieved of the obligation of resolving the privileges issue. In the future, I expect that the parties will timely advise both the Special Master and the Court of their resolution of any outstanding discovery or other issues so that similar situations will be avoided.

---

4. In *Jenkins,* the Court of Appeals for the Eleventh Circuit rejected a similar attempt by the FDIC to persuade the court to fashion a rule which would have given the FDIC an absolute priority over private litigants such as shareholders to the assets of officers, directors and other third parties who it alleged were responsible for the failure of a saving and loan association. The Court stated:

> Of course, it would be convenient to the FDIC to have an arsenal of priorities, presumptions and defenses to maximize recovery to the insurance fund but this does not require that

courts must grant all of these tools to the FDIC in its effort to maximize deposit insurance fund recovery. Any rule fashioned must have its base on the goal of effectuating congressional policy. We are not convinced the Congress considered collections against parties such as the bank related defendants in this case as a necessary part of the recovery to the deposit insurance fund. Any such priority over third-party lawsuits will have to come from Congress, not this Court.

*Jenkins,* 888 F.2d at 1546.

In light of the parties' resolution of the privilege issues referred to the Special Master in the February 12, 1991 Order, I will not approve and adopt that portion of the Report and Recommendation which deals with the privilege issues.

### III. Conclusion.

For the foregoing reasons, I will approve and adopt the Special Master's February 15, 1991 Report and Recommendation as modified. Specifically, I will relieve the FDIC of its obligation to produce all of the subcontractor loan files and in light of the parties' agreement, will decline to approve and adopt the Special Master's discussion of the privilege issue.