**RESOLUTION TRUST CORPORATION,**
a Corporation Organized and Existing
Under the Laws of the United States,
Plaintiff,

v.

**Robert L. KERR, Anna B. Schuhknecht,
J.D. Dryer, Sam Powell, and Connie
Barnett, Defendant.**

Civ. No. 92–3018.

United States District Court,
W.D. Arkansas,
Harrison Division.

Sept. 16, 1992.

Richard T. Donovan, Rose Law Firm,
Little Rock, Ark., Carolyn Arthur, Sr.
Atty., Resolution Trust Corp., Legal Div.,

Overland Park, Kan., for Resolution Trust Corp.

Frank J. Huckaba, Huckaba Law Firm, Mountain Home, Ark., Timothy W. Grooms, Philip Anderson, Williams & Anderson, Little Rock, Ark., for Robert L. Kerr.

Stephen W. Jones, Jack, Lyon & Jones, Little Rock, Ark., for Anna B. Schuhknecht.

Michael Thompson, Blackwell, Sanders, Matheny, Weary & Lombarde, Kansas City, Mo., Frank H. Bailey, Mountain Home, Ark., for J.D. Dryer and Connie Barnett.

James C. Johnson, Mountain Home, Ark., for Sam Powell.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Currently before the court is plaintiff's motion to strike the affirmative defenses of defendants Robert Kerr, Sam Powell, and Anna B. Schuhknecht, and the motion for summary judgment filed on behalf of Anna B. Schuhknecht and Robert Kerr. The parties opposing each motion have responded and the motions are now ready for decision.

## I. BACKGROUND.

This action was filed on February 26, 1992, by the Resolution Trust Corporation (RTC) against Robert Kerr, Anna Schuhknecht, J.D. Dryer, Sam Powell, and Connie Barnett. The defendants are former directors and officers of First State Savings Bank (FSSB). FSSB was a federally insured savings bank with its principal place of business in Mountain Home, Arkansas. The RTC alleges that in derogation of their duties and responsibilities to FSSB the defendants caused substantial loss and damage to FSSB, its depositors, and creditors.

On February 21, 1986, FSSB and the Federal Home Loan Bank Board (FHLBB) entered into a consent agreement. FSSB operated pursuant to the terms of the consent agreement until March 2, 1989, when the FHLBB appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as conservator of FSSB. Effective August 9, 1989, and pursuant to § 401(a)(1) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1437(a)(1), the RTC became conservator for FSSB. On October 25, 1990, the Office of Thrift Supervision (OTS) replaced the conservator for FSSB with the RTC as receiver for FSSB. On the same day the RTC in its corporate capacity acquired certain assets from the RTC as receiver including all causes of action and claims against any director, officer, or employee of FSSB. The RTC thereafter brought this action in its corporate capacity.

The RTC alleges that each defendant "sponsored, approved, managed, and/or permitted FSSB to make substantial amounts of imprudent loans and was involved in numerous other acts and omissions which caused FSSB substantial damage and loss." The RTC alleges the defendants breached their duties to the bank by, inter alia: excessive lending; failing to adopt adequate loan policies and procedures; failing to exercise loan review and approval functions; failing to establish or enforce auditing procedures; failing to conduct proper credit analysis and investigation; failing to supervise management; failing to obtain proper appraisals; failing to adequately secure loans; loaning funds pursuant to imprudent terms; making loans outside the normal and approved lending territory; inadequate investigation; failing to establish policies and procedures to respond to warnings and criticisms of federal regulatory authorities; and violating federal statutes, rules and regulations governing FSSB's operation.

The RTC specifically identifies the following commercial transactions: 1) Bahama Glen; 2) York–Clark Building; 3) Roten Loans (Orleans Square Building). Also identified is the act of Kerr, Powell, and Schuhknecht in releasing Tommy Nelson and Larry Powell from any liability for a land flip transaction. The complaint makes the following allegations regarding that transaction. The transaction took place in late 1982 involving a Dallas, Texas, real estate developer, D.L. Faulkner, and the

purchase of certain property in Dallas, Texas. Tommy Nelson, president of FSSB, and Larry Powell purchased certain real property for $305,000 and sold it for $2,305,000 the same day. In connection with this transaction Nelson and the board approved approximately $82 million in loans to Faulkner or Faulkner controlled entities. When the FHLBB examiner found and criticized the transaction the board including Kerr, Powell, and Schuhknecht, ratified the transactions. Kerr, Powell, and Schuhknecht were advised by counsel that Nelson's and Powell's involvement in the land flip transaction constituted a breach of fiduciary duty as well as a usurpation of a corporate opportunity. Notwithstanding this knowledge, Kerr, Powell, and Schuhknecht, executed a release of Nelson and Larry Powell.

## II. MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS.

Both the summary judgment motion and the motion to strike raise a statute of limitations issue. The court will first examine this issue as a ruling in favor of the defendants would make it unnecessary to address the other arguments raised in the motion to strike. Simply put, the defendants, Kerr, Powell, and Schuhknecht, contend that the applicable statute of limitations, Ark.Code Ann. § 16–56–105 (1987), had expired on February 20, 1989, prior to the time that a receiver was appointed. Defendants contend the cause of action accrued no later than February 21, 1986, when the FHLBB assumed control and domination of FSSB pursuant to the consent agreement.

By affidavit we are informed that the bank loans known as Bahama Glen were made in 1983. The loans known as York–Clark Building were made in 1984. The loans known as Roten Loans (Orleans Square Buildings) were made in 1983. The land flip transaction occurred late in 1982 and the release of Nelson and Larry Powell occurred in June of 1985. From February 21, 1986, until FSSB was placed in receivership it operated under the terms of the consent agreement. Defendants contend the consent agreement effectively transferred the "control" of the bank to the FHLBB. It is argued that the transfer of control ended any period of tolling of the statute of limitations that occurred because of the doctrine of adverse domination. Defendants do not concede the application of the doctrine of adverse domination but contend that even if that doctrine applies the statute of limitations bars this action. Thus, February 21, 1986, is identified as the latest possible point at which the cause of action accrued.

It is undisputed that the events that are the subject of this action against the former directors and officers of FSSB occurred prior to July, 1985, almost seven years before the commencement of this action. The RTC has asserted various common law tort actions against the defendants.[1] The gist of defendants' argument is that the claims were not viable under state law at the time RTC acquired the same.

In an action brought by the RTC, there are two potentially applicable statutes of limitations. First, the state statute of limitations applies to the causes of action prior to the RTC's acquiring the claims. Second, if the state statute has not expired when the RTC acquired the causes of action, the court applies the federal statute of limitations to determine if suit was timely instituted. In *Federal Deposit Insurance Corp. v. Former Officers & Directors Of Metro. Bank*, 884 F.2d 1304 (9th Cir.1989), *cert. denied*, 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990), the court discussed the relationship of the two separate statute of limitations and stated:

It is settled law that state limitations statutes are relevant in determining a

---

1. Although some courts have determined that an action for breach of fiduciary duty sounds in contract rather than in tort, we need not address this issue because the three year statute of limitations, Ark.Code Ann. § 16–56–105 (1987), would apply whether the claims sound in tort or contract. *See e.g., FDIC v. Former Officers & Directors of Metro Bank*, 884 F.2d 1304, 1307 (9th Cir.1989), *cert. denied*, 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990).

claim's viability at the time the federal agency acquires the claim. If the state statute of limitations has expired before the government acquires a claim, that claim is not revived by transfer to a federal agency. *See Guaranty Trust Co. v. United States,* 304 U.S. 126, 142, 58 S.Ct. 785[ ], 82 L.Ed. 1224 (1938). ("[T]he proof demonstrates that the United States never acquired a right free of a pre-existing infirmity, the running of limitations against its assignor, which public policy does not forbid."). *Id.* at 1309 n. 4 (applying the general federal limitation statute, 28 U.S.C. § 2415). The same reasoning has been applied to the specific statute of limitations for actions brought by the conservator or receiver adopted as part of FIRREA, 12 U.S.C. § 1821(d)(14). *See e.g., Resolution Trust Corp. v. International Ins. Co.,* 770 F.Supp. 300, 303 (E.D.La.1991). *See also Federal Deposit Insurance Corp. v. Shrader & York,* 777 F.Supp. 533, 535 (S.D.Tex.1991) (FIRREA does not "revive" barred claims). Thus, the court must initially determine whether the claims against these defendants were viable at the time of the assignment of the claims to the RTC. No issue is presented herein regarding the expiration of the federal statute of limitations subsequent to the assignment of the claims to the RTC.

The statute of limitations issue was previously raised by separate defendants Barnett and Dryer on motions to dismiss, which were denied by letter opinion and order filed May 26, 1992. In the motions to dismiss all parties appeared to agree that the doctrine of adverse domination applied. Because of this apparent agreement, the court was not required to specifically rule on the applicability of the doctrine to this case. Defendants Barnett and Dryer had resigned from the board of directors in 1985 and contended the statute of limitations began to run in 1985 because the defendants did not control the board or directors after 1985. The court declined to dismiss the claims at that time. In so doing, it was noted that the record then before the court reflected that at the time the FSLIC was appointed as conservator

for FSSB, the bank was under the control and domination of the defendants. The prior motions did not address the issue of whether entry of the consent agreement divested the board of its dominion and control over FSSB.

As the underlying transactions occurred prior to July, 1985, it is apparent that the claims at issue would have expired at the latest in 1988 unless the plaintiff can demonstrate grounds for equitable tolling of the statute of limitations. The RTC contends the doctrine of adverse domination applies and operates to toll the statute of limitations. The defendants vigorously argue that this court should not adopt the doctrine of adverse domination because it has never been adopted by the courts in Arkansas. Moreover, the defendants argue that even assuming the doctrine of adverse domination would be adopted by the Arkansas courts it would not apply to this action because it only tolls the statute of limitations with respect to officers and directors who control the institution. It is contended that this action is barred because from February 21, 1986, until the institution was placed in receivership more than three years later the institution was controlled by the FHLBB.

█ The doctrine of adverse domination is an equitable doctrine that operates to toll the statute of limitations. This doctrine has been widely applied by federal courts. *See e.g., Farmers & Merchants Nat. Bank v. Bryan,* 902 F.2d 1520, 1522–23 (10th Cir.1990); *Resolution Trust Corp. v. Interstate Federal Corp.,* 762 F.Supp. 905, 909 (D.Kan.1991); *Federal Deposit Insurance Corp. v. Manatt,* 723 F.Supp. 99, 105 (E.D.Ark.1989). Under this doctrine, the statute of limitations may be tolled as to a claim against the directors of a corporation as long as those directors "control and dominate the affairs of [the corporation]." *Federal Deposit Insurance Corp. v. Manatt,* 723 F.Supp. 99, 105), *quoting Federal Deposit Insurance Corp. v. Bird,* 516 F.Supp. 647, 651 (D.P.R.1981). Tolling is considered appropriate because where culpable directors and officers control a corporation, they are unlikely to initiate actions

or investigations for fear that such actions will reveal their own wrongdoing. *Id. See also Federal Deposit Insurance Corp. v. Howse*, 736 F.Supp. 1437, 1441 (S.D.Tex. 1990); *Federal Savings and Loan Insurance Corp. v. Williams*, 599 F.Supp. 1184, 1193–94 (D.Md.1984) Simply put, the directors or officers are unlikely to sue themselves. Under this doctrine, the statute of limitations is tolled until the wrongdoers no longer control or dominate the affairs of the corporation.

In *Federal Deposit Insurance Corp. v. Bird*, 516 F.Supp. 647 (D.P.R.1981) the court summarized the doctrine in the following terms:

> Assuming *arguendo* that defendants committed the alleged improprieties, in no meaningful sense can it be said that the claims could have been sued upon prior to the bank's failure and the appointment of a receiver. Is it logical to assume that the directors, in whom the bank has entrusted the discretion to sue, would authorize the initiation of an action against themselves for their own improprieties? To permit bank directors who control and dominate the affairs of a bank to benefit from their own inaction by finding that, as a matter of law, limitations run from the moment of their commission of improprieties, is a result which justice could not tolerate.

*Id.* at 651.

Defendants argue essentially that they no longer controlled or dominated the affairs of the institution after the February 21, 1986, consent agreement was executed. By affidavit Barney Larry and officer and director of FSSB states "[f]rom February 21, 1986, until First State Savings Bank was placed in receivership, the officers and directors of that institution always referred to the Consent Agreement, and made no significant decisions regarding its operations, unless those decisions were mandated or approved by the Supervisory Agent on behalf of the Federal Home Loan Bank Board." The affidavit further states "[t]he Directors would have complied with any lawful request made by the Supervisory Agent in order to preserve First State Savings Bank's corporate existence." Thus, defendants contend from February 21, 1986, forward, the FHLBB controlled and dominated FSSB.

The agreement contained, inter alia, the following provisions: 1) the FSLIC represented by a Supervisory Agent at the Federal Home Loan Bank of Dallas was authorized to negotiate a plan of merger, consolidation, or transfer of the institution's assets; 2) the institution consented to the appointment of a conservator or receiver; 3) the directors agreed to resign at the request of the Agent; 4) the directors agreed to fill any vacancy in the directorate by electing as director a person recommended by the Agent; 5) the directors agreed to take any steps necessary to amend the bylaws to provide such number of directors as the Agent shall recommend; 6) lengthy prohibitions against allowing any wholly owned or majority owned subsidiary or affiliate of the institution to take certain financial steps; and 7) the institution was to provide a list of all loans-in-process obligations and all legally binding commitments that existed as of the date of the agreement. In view of these provisions, defendants argue "the Supervisory Agent could have caused the institution to commence litigation against these defendants, which is sufficient control to begin the running of the statute under the rationale for the adverse domination theory plaintiff asserts as governing this case."

In support, the defendants cite, inter alia, *Federal Savings and Loan Insurance Corp. v. Burdette*, 696 F.Supp. 1196 (E.D.Tenn.1988). In *Burdette* the court indicated the events described were not in dispute by any party. Thereafter, the court states "a consent resolution was entered into by Knox and the FHLBB/FSLIC took over effective control of Knox, and became authorized to appoint a receiver/conservator if it saw fit." One of the first actions taken was to replace the president and CEO with an individual selected by the FHLBB/FSLIC. *Id.* at 1198–99. The court also noted that "[b]oth Ridge and the FSLIC seem to agree that the Knox claim accrued when the August 1983 consent resolution was entered." The court

further remarked that this agreement was "consistent with the applicable law, as until that point the very same officers and directors who are defendants and third-party defendants in these cases controlled Knox, and it is well-established that claims for breaches of fiduciary duties do not accrue until after those parties who will be named defendants no longer control the corporation." *Id.* at 1200. In view of the apparent agreement of the parties, the court was not required to independently assess the situation and determine whether the consent agreement terminated the adverse domination of the institution by the board of directors. Therefore, in the court's view the *Burdette* case does not stand for the proposition that a transfer of control automatically occurs when a consent agreement is entered into.

The RTC contends there are questions of fact concerning whether the officers and directors always referred to the consent agreement; whether the officers and directors made significant decisions regarding FSSB that were not approved or mandated by the supervisory agent; and whether the officers and directors complied with every request made by the supervisory agent.[2] The RTC argues that the consent agreement did not end the board's adverse domination. In support the RTC cites *Federal Deposit Insurance Corporation v. Howse,* 736 F.Supp. 1437 (S.D.Tex. 1990) in which the court concluded the entry of the consent agreement and appointment of a supervisory agent did not end the adverse domination by the defendants over the board of directors. *Id.* at 1442.

In *Howse* the court rejected the defendants' argument that they gave up control of the institution when the institution entered into the voluntary supervisory control agreement and consent agreement. In rejecting this argument the court gave three basic reasons. First, the court stated the affidavits indicated the defendants continued to exercise control over the institu-

tion and inhibited the supervisory agent's ability to conduct the institution's business. Second, the court noted the consent agreement did not change the fact that the defendants constituted the entire board. Third, the court pointed out that even if the FDIC should have discovered the wrongdoing, the FDIC was powerless to pursue legal action against the institution. It was noted that the FDIC did not have the legal authority to bring suit on behalf of the bank until it was appointed receiver. *Id.* at 1442 and n. 3.

In this case defendants Kerr and Schuhknecht remained on the board until the date the FSLIC was appointed receiver. The other directors at the time of the appointment were Mary Anne Kerr, wife of defendant Kerr, Barney Larry, an officer of the corporation, and Ron Kincaide, an attorney for FSSB. The court agrees with the RTC's assessment that these new directors were unlikely to initiate legal action against the alleged wrongdoers. While the materials before the court indicate the FHLBB through the consent agreement had the authority to alter the makeup of the board and affect the balance of control over FSSB, the materials fall short of establishing as a matter of law that the control or domination of the defendants ended when the consent agreement was entered. The court believes there are material questions of fact concerning the control of FSSB and the date on which the cause of action accrued for statute of limitations purposes.

The court also believes the courts in Arkansas would adopt the equitable tolling doctrine of adverse domination. This doctrine has been widely adopted by federal jurisdictions including a federal district court sitting in Arkansas. *Federal Deposit Insurance Corporation v. Manatt,* 723 F.Supp. 99, 105 (E.D.Ark.1989) (no discussion of Arkansas law).[3] It appears that

---

**2.** Defendants point out their affidavit is uncontradicted because the RTC has not supplied the court with any affidavits. The absence of contradictory affidavits does not necessarily enti-

tled the moving party to the entry of summary judgment.

**3.** It has been noted that even when a state statute of limitations is applicable, federal law

neither the Supreme Court of Arkansas nor the Arkansas Court of Appeals has specifically addressed the adverse domination doctrine. However, the court believes that application by Arkansas courts of analogous principles support this ruling.

In professional malpractice cases, the Arkansas courts have not strictly adhered to the occurrence rule and have recognized equitable tolling in cases involving concealment of the cause of action. For instance, in attorney malpractice cases the court has stated that "since 1877, it has been the law in Arkansas that the statute of limitations in an action against an attorney for negligence begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered by the client." *Goldsby v. Fairley*, 309 Ark. 380, 383, 831 S.W.2d 142 (1992). The Arkansas courts have also long recognized the principle that "if there is positive act of fraud or deceit which would conceal a plaintiff's cause of action, the statute of limitations is tolled until the fraud or deceit is discovered, or should have been discovered by the exercise of reasonable diligence." *Hickson v. Saig*, 309 Ark. 231, 234, 828 S.W.2d 840 (1992). The Arkansas courts also apply the rule that "the statute of limitation may be tolled during the time a putative plaintiff is prevented from bringing an action to which the statute of limitation applies." *Smackover State Bank v. Oswalt*, 307 Ark. 432, 436, 821 S.W.2d 757 (1991). Furthermore, the Arkansas Supreme Court has stated that a breach of a legal duty may be interpreted as constructive fraud which operates to toll the statute of limitations. This has been held to be true even in cases where the failure to disclose activities was not purposely deceitful. *Hyde v. Quinn*, 298 Ark. 569, 570–71, 769 S.W.2d 24 (1989).

Although not precisely on point, the court believes these cases indicate the tendency of the Arkansas courts to toll the statute of limitations during any period of concealment whether the period is the result of purposeful fraud and deceit or constructive fraud. The doctrine of adverse domination operates to toll the running of the statute of limitations during the period the entity is controlled by wrongdoers. During this period, the directors because of their control or domination of the corporation conceal the acts of wrongdoing.

The defendants' arguments against the adoption of this doctrine are not persuasive. Defendants refer the court to *Magale v. Fomby*, 132 Ark. 289, 201 S.W. 278 (1918) which dealt with an action brought against the directors of a bank while the directors were still serving on the board. In *Magale* the court rejected the notion that the directors are trustees in whose favor the statute of limitations does not run during the continuance of the trust. Rather, the court noted it had previously adopted the view that "the directors of banks are not trustees of an express trust within the rule exempting such trusts from the operation of the statute, but that they are trustees of an implied trust and are within the protection [of the three year] statute [of limitations]." *Id.* at 296. The court went on to note that in the "present case there has been no fraudulent concealment of their acts by the directors that would delay the operation of the statute of limitations." *Id.* at 297. Rather, the testimony in that case was that the bank cashier and one of the directors had frequent conversations regarding the transactions at issue with the shareholder who ultimately brought suit. The court concluded that the shareholder had knowledge of the conditions as they existed. *Id.* at 297–98. In

governs when the cause of action accrues and whether the statute of limitations was equitably tolled. Typically this occurs in situations where the federal court merely borrows the state statute of limitations in the absence of an applicable federal limitation period. *See e.g., Farmers & Merchants Nat. Bank v. Bryan*, 902 F.2d 1520, 1522 (10th Cir.1990). Even in such situations, the Supreme Court has suggested that questions of tolling are governed by state law, while ques-

tions of accrual are governed by federal law. *West v. Conrail*, 481 U.S. 35, 40 n. 6, 107 S.Ct. 1538, 1542 n. 6, 95 L.Ed.2d 32 (1987). In this case the RTC is asserting state law causes of action and the state statute of limitations applies to the issue currently before the court. In such cases it may be appropriate to resort to state law principles regarding accrual and tolling. Indeed, the parties in this case have assumed that Arkansas law is controlling on this issue.

view of the particular circumstances present in *Magale,* we do not believe the adoption of the doctrine of adverse domination would as defendants suggest amount to an overruling of the *Magale* case.

The defendants also refer the court to numerous professional malpractice cases in which Arkansas courts have refused to adopt the discovery doctrine and have held that the limitations begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered. *See e.g., Ford's Inc. v. Russell Brown & Co.,* 299 Ark. 426, 773 S.W.2d 90 (1989). Defendants suggest that "[a]dopting the adverse domination theory in an effort to avoid injustice while maintaining the occurrence rule in malpractice cases might not be an instance of straining a gnat while swallowing a camel, but it would be akin to that." We do not believe this rejection of the discovery doctrine in general in professional malpractice cases indicates that Arkansas courts would reject the doctrine of adverse domination. Nor do we believe the underlying rationale for the discovery doctrine and the doctrine of adverse domination are the same. The former starts the running of the statute of limitations on the awareness of the particular plaintiff i.e. when the plaintiff knew or should have known. While the latter, concentrates on the ability of the defendants to conceal the cause of action by failing or refusing to pursue legal action against the culpable parties—themselves. The adverse domination doctrine applies when the very individuals who have the power to bring suit are also the wrongdoers against whom suit should be brought.

However, having concluded the doctrine of adverse domination applies in this case does not resolve the statute of limitations issue. There remain issues of fact regarding when, and if, the board relinquished its dominion and control to the FHLBB. On the basis of the record before us we cannot determine as a matter of law whether the claims were still viable under Arkansas law when the RTC was appointed as receiver. Accordingly, the motion for summary judgment will be denied and the motion to strike the statute of limitations offense will also be denied.

### III. MOTION TO STRIKE AFFIRMATIVE DEFENSES.

The RTC has moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike the affirmative defenses of defendants, Kerr, Powell, and Schuhknecht. The RTC argues that the affirmative defenses of waiver, estoppel, duress, laches, contributory negligence, failure to mitigate damages, and statute of frauds must be stricken because they are insufficient as a matter of law. The motion to strike also addresses the statute of limitations defense which was discussed, *supra* in part II, and will not be addressed again.

Rule 12(f) provides "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike are viewed with disfavor and are infrequently granted. *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir.1977) (citations omitted). An affirmative defense may be stricken pursuant to Federal Rule of Civil Procedure 12(f) if it is insufficient as a matter of law. The motion to strike will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear. *Id.*

The RTC initially argues that no defenses based upon contributory negligence or failure to mitigate can be asserted against it. Plaintiff argues the RTC owes no duty to the defendants, that as a government body created to protect the interests of the public against the malfeasance by those operating financial institutions its duty runs to the insurance fund and the public, not those whom it is charged with regulating. It is argued that the defendants should not be permitted to assert conduct of the FHLBB, the RTC, or the FSLIC, either prior to closing, subsequent to closing, or in the liquidation of FSSB's assets, in an effort to avoid liability for their own wrongdoing.

The plaintiff reminds the court that the RTC is charged by FIRREA with the duty to maximize recoveries in the cases of failed financial institutions and carry out the task of liquidating the assets of institutions around the country. Plaintiff maintains that the allowance of the defenses asserted in this case would interfere with the RTC's performance of its duties and cause a further drain on the already beleaguered insurance fund.

In opposition defendants contend that plaintiff's no duty argument rests of a fundamental misunderstanding of the bases for the defenses of contributory negligence and failure to mitigate. We are informed that those defenses do not depend upon a duty to the defendants. Rather, defendants argue "they depend, instead, in part on the duty a plaintiff owes to himself and in part on the principle that a defendant should not be liable for damages that he did not proximately cause." Defendants additionally argue that the no duty rule does not apply to Arkansas comparative fault because the comparative fault statute does not compare relative duties among the parties; rather, the statute compares the relative contribution of each party's fault to the damages as a matter of causation.

It is clear that Arkansas law does incorporate an element of duty in both the defense of failure to mitigate and comparative fault. Under Arkansas law, a party has the "duty to mitigate damages." *Crain Industries, Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991); *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990). *See also Arkansas Model Jury Instructions* 2214 and 2229 (3rd Ed.1989). The defense of comparative fault also incorporates the concept of duty and the breach thereof. The Arkansas comparative fault statute defines fault as "any act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is a proximate cause of any damages sustained by any party." Ark.Code Ann. § 16–64–122 (1987). These duties may be regarded as duties imposed by the law on all persons in general rather than a duty running to a specific individual but that does not alter the fact that each does incorporate the concept of duty. In particular, the duty to mitigate damages is frequently viewed as a duty imposed by law to further a policy limitation on the amount of damages that may be collected by an injured party. *See e.g., Federal Deposit Insurance Corp. v. Dannen*, No. 88–6145–CV–SJ–6 (W.D.Mo. August 30, 1990) (slip opinion provided by defendants' counsel).

Defendants further state that the common law defenses have not been pre-empted by FIRREA. Therefore, defendants contend the rights of the insured institution against directors are determined by state law. As the insured institution would be subject to the common law defenses of contributory negligence and failure to mitigate damages, RTC as successor to the institution stands in the shoes of FSSB and is therefore subject to the same defenses to which FSSB would be subject had it brought this action.

The no duty rule has gained general acceptance in the various federal courts. *But see Federal Deposit Insurance Corp. v. Dannen*, No. 88–6145–CV–SJ–6 (W.D.Mo. August 30, 1990) (slip opinion provided by defendants' counsel). *Cf. Federal Deposit Insurance Corp. v. Cherry, Bekaert & Holland*, 742 F.Supp. 612 (M.D.Fla.1990) (rejecting the no duty rule when the FDIC was bringing a negligence suit against third-parties—no former officers or directors). It is clear the duty owed by the RTC runs to the public and not to the institution or its officers and directors. Accordingly, if an affirmative defense includes the element of duty it is insufficient as a matter of law. *Resolution Trust Corporation v. Greenwood*, 798 F.Supp. 1391 (D.Minn.1992). In this regard, the court in *Burdette* summarized both the no duty rule and the policy reasons behind it as follows:

> In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered. Suits by the FSLIC as a receiver to recover assets, or to recover

damages for wrongdoing, should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second guessing in actions to recover damages from *wrongdoing directors and officers.* If there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as a receiver....

[A] director or officer of a failed savings and loan accused of wrongdoing should not be entitled, and should not be surprised by an inability, to examine the conduct of a receiver of a failed institution in an attempt to reduce the recovery of the receiver in subsequent civil actions by the receiver.

*Federal Savings and Loan Insurance Corp. v. Burdette,* 718 F.Supp. 649, 663–64 (E.D.Tenn.1989).

 The court believes the public policy rationale of the no duty rule as expressed in *Burdette* is persuasive and that the affirmative defenses of contributory fault and mitigation of damages should be stricken. Although the concepts of duty and causation are difficult to separate, the court believes that they are separate concepts. In order to prevail on a negligence claim the RTC must first establish that the defendants were negligent and second that such negligence was a proximate cause of the losses sustained. This issue was addressed by the court in *In re Sunrise Securities Litigation,* 138 F.R.D. 60 (E.D.Pa. 1991). The court in that case had previously entered an order striking the contributory negligence claim asserted by the defendant against the FDIC. *Id.* at 61. In ruling on a discovery dispute concerning the relevancy of various documents, the court noted that the concepts of contributory negligence and proximate causation were separate and distinct. In so ruling, the court stated:

In their defense, the defendants may argue that the FDIC has not made out a *prima facie* case because it has failed to demonstrate proximate cause. The defendants may contend that any one of a number of causal facts were the proximate cause of the losses, including the conduct of the FDIC.

*Id.* at 62 (citations omitted) (emphasis in original). *See also Federal Deposit Insurance Corp. v. Renda,* 692 F.Supp. 128, 133 (D.Kan.1988) (Allegation that no action or inaction by the defendants caused the plaintiffs' damages are not avoidances or affirmative defenses; rather, they are assertions that the plaintiffs cannot establish a prima facie case.).

Proximate cause is therefore an element of the claim and not an affirmative defense. While this appears to be a fine distinction, the court believes it is a distinction made necessary under the law. Thus, in their defense the defendants may argue, inter alia, that the RTC has not established that the defendants' actions were the proximate cause of the injury suffered.

The plaintiff's motion to strike the remaining affirmative defenses will be denied. Neither party has presented any substantive arguments regarding the remaining defenses and the court cannot determine whether these defenses are or are not applicable to the facts of this case.

A separate order in accordance herewith will be concurrently entered.

IT IS SO ORDERED.